IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

STATE OF ARIZONA,
*Appellee*,

*v.*

RONALD VASSELL,
*Appellant*.

No. 2 CA-CR 2015-0004
Filed September 24, 2015

———————————————

Appeal from the Superior Court in Pima County
No. CR20131007005
The Honorable Richard D. Nichols, Judge

**AFFIRMED**

———————————————

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
*Counsel for Appellee*

Peter B. Keller, Tucson
*Counsel for Appellant*

## OPINION

Presiding Judge Miller authored the opinion of the Court, in which Judge Espinosa concurred and Chief Judge Eckerstrom specially concurred.

M I L L E R, Presiding Judge:

**¶1**      After a jury trial, Ronald Vassell was convicted of conspiracy to possess marijuana for sale, possession of a deadly weapon during a felony drug offense, and endangerment arising out of the discharge of a firearm during the execution of a search warrant. He raises a single issue on appeal—whether the trial court erred by declining his request to instruct the jury that his shooting at police officers serving the search warrant may have been justified. For the reasons that follow, we affirm the court's ruling and Vassell's convictions.

### Facts

**¶2**      We view the facts in the light most favorable to Vassell as the party requesting the instruction. *See State v. King*, 225 Ariz. 87, ¶ 13, 235 P.3d 240, 243 (2010). In November 2012, Tucson police obtained a search warrant to investigate suspected narcotics activity in a residence. Because of the dangers associated with a firearm in this investigation, the magistrate issued a "no-knock" warrant that authorized the police to break into the residence.[1] A SWAT team comprised of ten officers was directed to execute the warrant. The

---

[1] *See* A.R.S. §§ 13-3915(B), 13-3916(B)(3) ("On a reasonable showing that an announced entry to execute the warrant would endanger the safety of any person . . . the magistrate shall authorize an unannounced entry" that includes authority to break into the residence.). Moreover, a person may not use or threaten to use physical force to obstruct a peace officer acting under color of authority from enforcing the penal law. *See* A.R.S. § 13-2402(A)(2).

SWAT officers wore uniforms that had the word "POLICE" on the front, back, side, and shoulder.

¶3  The officers testified that SWAT members receive specialized training, possess particular skills, and carry extra equipment. They operate in two-person teams, each with a particular assignment. In this case, their goal was to secure a quick entry into the house, but immediately announce their status as police officers entering the residence to serve a search warrant. The "door" officer tried the front door, found it to be locked, and then used a metal battering ram to quickly open the door. As the door was struck with the battering ram, all ten SWAT officers began yelling out, "Tucson Police, search warrant, get on the ground," and they continued to do so while they were inside. An officer also activated a loudspeaker device that repeatedly announced "Tucson Police Department, search warrant" in both English and Spanish, at a volume loud enough to be heard within the house.

¶4  The door officer had to give the door "a couple hits" to open it fully, because a couch was partially blocking the door. The first officer to enter the house, who was the designated "point" testified:

> [T]he first time [the ram] hit the door, I began making announcements, "police search warrant, police, search warrant," and I keep repeating those until the door comes open. And then after the door came open and I began my entry, I transitioned my commands to "police, get down," to give direction to anybody inside to get down on the floor.

The house was dark, and the police used "pretty bright flashlights" affixed to their weapons to see. When the point officer entered, he saw a man later identified as Vassell "semi-crouched" on the couch and beginning to stand up. The point officer saw that Vassell was holding a rifle and immediately yelled, "[P]olice, drop it." Vassell ran toward the hallway, lifting the rifle up over his shoulder so that

it pointed back toward the officers as he went.[2] In the face of what the point officer identified as a lethal threat to officer safety, he disengaged the safety on his own rifle. He attempted to deploy a flash bang device into the hallway to provide cover for the other officers, but his finger slipped and he accidentally fired one shot from his gun. He then reengaged the gun's safety and successfully deployed the flash bang down the hallway.

¶5        The point officer informed the sergeant that he had seen a man with a rifle run into the hallway. The sergeant commanded the officers to exit the house. The point officer then heard the first gunshot coming from somewhere down the hall. He held his position while the other officers exited and then, as he turned to exit the house himself, he heard a second gunshot from down the hall. The door officer testified that the time from the moment the door was breached until he heard the gunshots and the flash bang in the hallway was "maybe about 15 to 20 seconds" altogether. The point officer testified that the time when he entered the house until he accidentally fired his weapon was about ten to fifteen seconds. A third officer testified, "It was all very, very quick."

¶6        Police officers surrounded the house and waited. After several hours, Vassell surrendered without further incident. No one else was in the house that night. A subsequent search uncovered more than fourteen pounds of marijuana, as well as various indicia of marijuana packaging and shipping. Later analysis determined the two shots from the hallway had been fired from a .223-caliber rifle from inside the hall bathroom. A .223-caliber rifle was found leaning against a wall in another room.

---

[2] About this time, another officer detonated a light-sound distraction device, also known as a "flash bang," outside of the house in the backyard, in order to try to draw the attention of anyone inside toward the back of the house. The door officer testified that SWAT officers use flash bangs "as a distracting device . . . to kind of throw—throw the attention off of anybody . . . inside the house."

¶7 At trial, a police officer testified that criminals frequently impersonate police officers when staging home invasions. At the close of evidence, defense counsel requested a jury instruction on the defense of justification, arguing there was a question of fact as to whether Vassell had fired the two shots in self-defense against the perceived use of unlawful physical force. The trial court denied this request, ruling the evidence did not support a justification instruction because the police had used only lawful force. Vassell was convicted and filed a timely appeal. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**Discussion**

¶8 Vassell contends the trial court erred when it denied his request for a justification instruction on the endangerment count. We will not disturb a trial court's decision to refuse a jury instruction absent "a clear abuse of . . . discretion and resulting prejudice." *State v. Ruggiero*, 211 Ariz. 262, ¶ 6, 120 P.3d 690, 692 (App. 2005).

¶9 A party is entitled to a jury instruction on any theory of the case which the evidence reasonably supports. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). "'[T]he slightest evidence'" of justification requires that a defendant be granted a justification instruction, *Ruggiero*, 211 Ariz. 262, ¶ 10, 120 P.3d at 692, *quoting State v. Hussain*, 189 Ariz. 336, 337, 942 P.2d 1168, 1169 (App. 1997); however, the instruction need not be given "'unless it is reasonably and clearly supported by the evidence.'" *Id.* ¶ 10, *quoting State v. Walters*, 155 Ariz. 548, 553, 748 P.2d 777, 782 (App. 1987); *see also State v. Strayhand*, 184 Ariz. 571, 587-88, 911 P.2d 577, 593-94 (App. 1995) (instruction required if there is "evidence upon which the jury could rationally sustain the defense"). The slightest *evidence*—not merely an inference making an argument possible—is required because speculation cannot substitute for evidence. *Cf. In re Harber's Estate*, 102 Ariz. 285, 294, 428 P.2d 662, 671 (1967); *State v. Almaguer*, 232 Ariz. 190, ¶ 19, 303 P.3d 84, 91 (App. 2013).

¶10 Vassell would have been "justified in threatening or using deadly physical force against another . . . [w]hen and to the

degree a reasonable person[3] would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force." A.R.S. § 13-405(A)(2). But the threat or use of physical force is not justified "[t]o resist an arrest that the person knows or should know is being made by a peace officer . . . whether the arrest is lawful or unlawful, unless the physical force used by the peace officer exceeds that allowed by law." A.R.S. § 13-404(B)(2); *State v. Fontes*, 195 Ariz. 229, ¶¶ 11-12, 986 P.2d 897, 900-01 (App. 1998).

¶11      On appeal, as in the trial court, Vassell does not argue that the police used unlawful or excessive physical force. Rather, he maintains only that there was a question of fact as to whether he knew or should have known that the people entering the home were peace officers as opposed to home invaders. Where, as here, a defendant claims self-defense to justify his use of physical force against a peace officer who was using lawful force, the slightest evidence that the defendant actually believed the individual was not a peace officer is required to support a justification instruction. *See, e.g.*, Model Penal Code § 3.04 explanatory note (Am. Law Inst. 2001) ("*actor's actual belief* is sufficient" to support self-defense justification) (emphasis added). Mere speculation that a defendant might have believed the individual not to be a peace officer is insufficient. *Compare State v. Salazar*, 24 Ariz. App. 472, 476, 539 P.2d 946, 950 (1975) (aggravated battery defendant not entitled to instruction on lesser-included offense of battery where "no evidence that *the defendant did not know* the officer he struck was a police

---

[3] Our Supreme Court held that this language refers to "a reasonable person in the defendant's circumstances." *See King*, 225 Ariz. 87, ¶¶ 11-12, 235 P.3d at 243 (construing A.R.S. § 13-404(A)); A.R.S. § 13-405(A)(1) (use of deadly physical force under § 13-405 must comport with § 13-404 to be justifiable). In the context of justification, "the defendant's circumstances" include what the defendant knew at the time. *See, e.g., State v. Andersen*, 177 Ariz. 381, 386, 868 P.2d 964, 969 (App. 1993) (defendant not entitled to self-defense justification instruction where he did not know or suspect victim armed).

officer") (emphasis added), *with State v. Skinner*, 118 Ariz. 517, 519-20, 578 P.2d 196, 198-99 (App. 1978) (aggravated battery defendant entitled to instruction on lesser-included offense of battery where he actually denied knowing that victim was plain-clothes police officer attempting to lawfully arrest him).

**¶12** Vassell's mistaken identity argument finds no support in the record. For instance, there is no evidence that he believed home invaders sometimes impersonate police,[4] nor that he actually thought the SWAT team members to be home invaders when he fired two shots from the hall bathroom. The absence of "'the slightest evidence'" to that effect is dispositive. *Ruggiero*, 211 Ariz. 262, ¶ 10, 120 P.3d at 692-93, *quoting Hussain*, 189 Ariz. at 337, 942 P.2d at 1169.

**¶13** Our concurring colleague suggests that a defendant will always have to testify at trial to be entitled to a justification instruction. We disagree. For example, in *Cadle v. State*, 610 S.E.2d 574, 576 (Ga. Ct. App. 2005), the defendant's pretrial statement to police explaining why he shot a police officer was admitted, thereby providing evidence to support a justification defense even though defendant did not testify. In this case, the record reflects no statement by Vassell during the multi-hour event or afterwards to police investigators that he mistakenly believed the SWAT officers were anything but what they purported to be.

**¶14** In contrast, ample evidence contradicted his speculative inference that the jury could have reasonably concluded he did not know and should not have known that the intruders were peace officers. Before Vassell pointed his rifle toward the officers and fired

---

[4]The concurrence's suggestion that the jury could conclude that on account of being a drug trafficker, Vassell would have known of the "occupational risk" that a home invader might come to steal "his contraband," requires an assumption that Vassell was in fact a drug trafficker with contraband. This proposition reverses the presumption of innocence, a principle so fundamental to our system of justice as to be "'axiomatic.'" *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978), *quoting Coffin v. United States*, 156 U.S. 432, 453 (1895).

the first shot, he would have heard the shouts of police officers announcing their presence and purpose, and he could have seen multiple officers with the word "POLICE" on multiple parts of their uniforms.

¶15        Vassell appears to argue that despite notice the intruders appeared to be police or verbally self-identified as police, there was still a question of fact as to whether he knew or should have known that these particular intruders were in fact police. Assuming for the purpose of argument that Vassell knew home invaders sometimes impersonate police and use tactics like the ones here, then he necessarily also knew that those being impersonated—actual police—use such tactics as well. Therefore, even under his theory, Vassell knew there was at least a real and significant possibility he was shooting at actual police officers. Section 13-404(B)(2) explicitly rejects justification as a defense where a person has such knowledge absent unlawful physical force by the officer.

¶16        The Washington Court of Appeals came to a similar conclusion in *State v. Westlund*, 536 P.2d 20, 24-25 (Wash. Ct. App. 1975). There, the court considered whether to adopt a rule that a suspect could be justified in resisting arrest if he reasonably but mistakenly believed he was about to be seriously injured by police use of excessive force. *Id.* The court rejected this test, holding instead that resistance is justified only if the suspect was "actually about to be seriously injured" by excessive force. *Id.* The court recognized that where a person resists arrest, "the situation can degenerate to the point that what should have been a simple lawful arrest leads to serious injury or death to the arrestee, the police or innocent bystanders." *Id.* at 25. The court concluded that an actual-circumstances standard is necessary to protect the arrestee, bystanders, and police officers. *Id.*

¶17        In short, the evidence showing immediate, clear police presence was not challenged by any evidence tending to show that Vassell did not know the intruders were peace officers. Thus, the trial court did not abuse its discretion when it refused to instruct the jury on justification—a theory of the case that was not reasonably

8

and clearly supported by even the slightest evidence. *See* A.R.S. § 13-404(B)(2); *Ruggiero*, 211 Ariz. 262, ¶ 10, 120 P.3d at 692-93.

**¶18** As a final matter, we outline why we respectfully disagree with our concurring colleague that this case should be resolved on procedural grounds. Citing Rule 21.2, Ariz. R. Crim. P., our colleague would affirm on the basis that Vassell has not properly preserved his request for a justification instruction because he did not request it in writing below. First, we note that the state did not object to the oral form of Vassell's request, nor cite Rule 21.2 on appeal. A party's failure to argue a claim ordinarily constitutes waiver of that claim. *See, e.g.*, *State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995). Second, while we agree with the concurrence that federal case law interpreting Rule 30, Fed. R. Crim. P., can be persuasive authority in interpreting Rule 21.2, Ariz. R. Crim. P., we find *United States v. Upton*, 559 F.3d 3 (1st Cir. 2009), distinguishable. The issue in *Upton* was the untimeliness of an oral request for a jury instruction, not the fact that it was an oral request. *Upton*, 559 F.3d at 9 ("The district judge acted within her discretion to deny Upton's requested instruction *because the request was untimely*.") (emphasis added). Here, Vassell's counsel timely requested a justification instruction. *See* Ariz. R. Crim. P. 21.2. Third, argument by counsel made clear that the trial court knew the precise legal theory of justification for which Vassell was requesting an instruction: use of deadly physical force in self-defense pursuant to A.R.S. § 13-405. Vassell's counsel requested the instruction on the theory that Vassell used deadly physical force "in response to the threat to his life presented by what was going on," *i.e.*, in self-defense under A.R.S. § 13-405; the prosecutor countered that there was no evidence of "unlawful" use of force by police, in a clear reference to A.R.S. § 13-405(A)(2); and the court quoted extensively from A.R.S. § 13-404(B), which is incorporated into A.R.S. § 13-405 under § 13-405(A)(1), in declining to give the instruction. Thus there was no confusion as to which justification statute was at issue.

**¶19** Finally, even if the concurrence is correct that instructions must always be requested in writing, Vassell still could have submitted a timely written instruction had the trial court shown openness to instructing the jury on justification during the

sidebar conference.[5]  But "[w]here, as here, the trial court had by its ruling excluded the issue of self-defense from the jury's consideration, it was obviously superfluous to submit a proposed instruction for the court's consideration" in writing.  *State v. Johnson*, 108 Ariz. 42, 44, 492 P.2d 703, 705 (1972).   Under these circumstances, we do not consider Vassell's failure to put his request in writing fatal to his argument that the trial court erred in not giving the instruction.  "The record indicates that the trial court acknowledged [Vassell's] requested instructions, and some discussion was had as to their propriety.  Therefore, the trial court was adequately informed of [his] request despite the absence of a writing."  *United States v. Krapp*, 815 F.2d 1183, 1187 (8th Cir. 1987).

**Disposition**

**¶20**        For the foregoing reasons, we affirm Vassell's convictions and sentences.

E C K E R S T R O M, specially concurring in the judgment:

**Evidentiary Support**

**¶21**        As the lucidly written majority opinion acknowledges, a party is entitled to a jury instruction on "any theory of the case which the evidence reasonably supports."   And "[t]he slightest evidence" of justification requires the court to provide an instruction on the pertinent defense—a low threshold designed to preserve the jury's exclusive role in deciding factual disputes.  *See State v. Plew*, 150 Ariz. 75, 78, 722 P.2d 243, 246 (1986), *disapproved on other grounds by State v. King*, 225 Ariz. 87, ¶¶ 9, 12, 235 P.3d 240, 242, 243 (2010); *State v. Johnson*, 108 Ariz. 42, 43, 492 P.2d 703, 704 (1972). In evaluating whether the defendant has cleared this threshold, our supreme court commands that we view the evidence in the light most favorable to the party requesting the instruction.  *King*, 225 Ariz. 87, ¶ 13, 235 P.3d at 243.

---

[5]For instance, Vassell could have submitted the ready-made written instructions found in State Bar of Arizona, *Revised Arizona Jury Instructions (Criminal)* Std. 4.04, 4.04-1, and 4.05 (2015), which are modeled after the relevant statutes.

¶22 Applying those standards here, Vassell presented ample circumstantial evidence to be entitled to a jury determination of whether he discharged his weapon to defend himself against unknown intruders. As my colleagues emphasize, the state indeed presented substantial evidence suggesting that Vassell could have known that the intruders were police officers: police announced their identity both vocally and perhaps with loudspeakers upon or shortly after entry, and the officers entering wore uniforms with the word "POLICE" displayed in large letters across their backs and in smaller letters on each shoulder.[6] But Vassell countered by presenting evidence from which a jury could have reasonably inferred that he initially believed the officers were instead home intruders with criminal intentions.

¶23 That evidence demonstrated that the SWAT team executed a "no knock" warrant on the residence at 10:30 p.m. The officers testified they carefully choreographed the operation to both surprise and disorient any inhabitants. Accordingly, the entry team deployed from a "purposely clandestine" unmarked moving van parked immediately in front of Vassell's residence. The police parked marked vehicles in locations not visible from the residence, but obscured behind the garage on one side and a wall on the other. The emergency lights of those vehicles were not activated until the ten-person entry team had "gotten through the front door."

¶24 The officers observed that the house was unlit on the inside—a fact that would allow the jury to infer Vassell was asleep on the couch until entry was attempted. *See State v. Aguilar*, 169 Ariz. 180, 182, 818 P.2d 165, 167 (App. 1991) (jury may rely on common sense and experience). After breaching the door with the second stroke of the battering ram, the officers entered in a crouched posture with bright flashlights shining from their weapons as the

---

[6]The above description of the entry team's uniform is taken from photographic exhibits admitted at trial. To the extent a police identifier could be found on the front of the uniform as well, this was obscured by tactical gear and weapons, and we must view the evidence in the light most favorable to Vassell.

first flash grenade[7] exploded to the rear of the residence. As they entered, they saw Vassell getting up from the couch holding a rifle. They shouted, "[P]olice, drop it," as Vassell ran toward the hallway with his back to them. At the same time, an officer erroneously discharged his weapon, then successfully discharged a second flash grenade in the hallway. As Vassell ran into the hallway bathroom, he pointed his rifle behind his shoulder and fired two shots: one into a hallway closet opposite the bathroom door and the other into the floor of the shower. When the shots were fired, no officers were in the hallway.

¶25 The officers testified that the entire time from entry into the home until the officer's discharge of the weapon was ten to fifteen seconds; "[i]t was all very, very quick." No meaningful period of time passed between the accidental shot by the officer and the two shots fired by Vassell; those shots occurred in close succession. And, within those seconds, Vassell was distracted by two flash grenades which each created an extremely loud noise and a blinding flash of light. According to the conflicting testimony of the officers, the jury could infer either that the loudspeakers were not utilized at all or not activated until after the breach of the door. Lastly, Officer D.M., of the Counter Narcotics Alliance, testified that "home invasion crews," intruders who seek to steal a drug trafficker's drugs and money, "all" claim to be police officers to gain entry and frequently disguise themselves as the police.

¶26 From this testimony—elicited entirely from police officers themselves—a jury could reasonably infer that (1) the only vehicle visible to Vassell before the entry occurred was an unmarked van; (2) therefore, if Vassell had looked out the window, he would have seen his assailants emerging from an unmarked van not a police vehicle; (3) the deafening noise of the two flash grenades would have made it difficult to hear any officers vocalizing that they were police; (4) the flashlights aimed at Vassell in an otherwise dark house would have made it difficult, if not impossible, for him to make out the dress of the intruders, much less read the words

---

[7]The officers alternatively described this as a "light sound distraction device" or a "flash bang."

"POLICE" that were prominent only on the backs of the officers' camouflage uniforms; and (5) the officer's erroneous discharge of his weapon as Vassell ran toward the bathroom would have not only reinforced his belief that the intruders were not police but also indicated that the force used against him exceeded that allowed by law. *See* A.R.S. § 13-404(A), (B)(2).

¶27          The majority emphasizes that Vassell, who chose not to take the witness stand, never testified or made any post-arrest statements that he thought the entrants were intruders before he discharged the rifle. The majority therefore characterizes the defense theory as speculative. But in criminal cases, the state routinely infers a defendant's intentions and knowledge from circumstantial evidence; the defense is no less entitled to do so. *See, e.g.*, *State v. Jensen*, 217 Ariz. 345, ¶¶ 7, 15, 173 P.3d 1046, 1050, 1052 (App. 2008) (circumstantial evidence sufficient to show defendant knowingly possessed child pornography); *State v. Hull*, 15 Ariz. App. 134, 135, 486 P.2d 814, 815 (1971) (knowing possession of marijuana established by circumstantial evidence). Of course, the defendant possesses a Fifth Amendment right both to decline a police interview after arrest and decline to take the witness stand at trial. In asserting those rights, a defendant does not forgo the right to a defense instruction so long as the defendant presents other evidence supporting the underlying theory of the case. *See State v. Stuard*, 176 Ariz. 589, 603, 863 P.2d 881, 895 (1993) ("Arizona law makes no distinction between circumstantial and direct evidence."). Moreover, any pretrial statements made by Vassell supporting his defense would have likely been inadmissible as self-serving hearsay. *See State v. Barger*, 167 Ariz. 563, 566, 810 P.2d 191, 194 (App. 1990).

¶28          Here, the evidence suggests both that Vassell was sleeping on the couch, with which he partially blocked his front door, and that he kept a rifle by his side as he did so. From this, a jury could reasonably infer that he too was aware of the occupational risk that a "home invasion crew" might attempt to enter his home to steal his contraband.

¶29          As the majority's characterization of the same evidence makes clear, the above facts are subject to more than one reasonable inference. But, in evaluating whether Vassell was entitled to an

instruction on his justification theory, we are duty-bound to view the facts, and the inferences therefrom, in the light most favorable to Vassell.[8] So viewed, I respectfully submit that he presented far more than slight evidence in support of a justification defense. He was therefore entitled to an instruction on that defense to the extent he properly requested it. For the reasons set forth below, however, I would conclude he failed to do so.

**Forfeiture**

¶30 Rule 21.2, Ariz. R. Crim. P., states that written requests for instructions "shall [be] submit[ted]" to the trial court either "[a]t the close of evidence or . . . earlier." They also "shall [be] furnish[ed] . . . to the other parties." This rule is drawn from Rule 30, Fed. R. Crim. P., which is substantively the same. *See* Ariz. R. Crim. P. 21.2 cmt. Given the rule's clear terms, a claim of error is not preserved when, as here, a defendant fails to request an instruction in writing. *United States v. Upton*, 559 F.3d 3, 8 (1st Cir. 2009). In the federal system, plain error review normally results from the absence of a proposed written instruction. *E.g.*, *United States v. Stevens*, 380 F.3d 1021, 1026 (7th Cir. 2004); *United States v. McGrath*, 811 F.2d 1022, 1024 (7th Cir. 1987). In Arizona, we apply the analogous standard of fundamental error review when an instruction-related issue has not been preserved below, *see State v. Schurz*, 176 Ariz. 46, 54, 859 P.2d 156, 164 (1993); *State v. Gendron*, 168 Ariz. 153, 154-55, 812 P.2d 626, 627-28 (1991), except in those very rare circumstances involving structural error, which is not present here. *See State v. Valverde*, 220 Ariz. 582, ¶¶ 9-12 & n.2, 208 P.3d 233, 235-36 & 236 n.2 (2009) (discussing different standards of appellate review); *see also Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2004) (noting fundamental error is similar to, but somewhat broader than, federal plain error

---

[8] The state argues that the police vehicles were visible to Vassell, with their lights illuminated at or before entry; the loudspeakers were activated simultaneously with the entry; and the "POLICE" markings were clearly visible in various places on the officers' bodies. To the extent the record can be so construed, such contentions do not describe the evidence in the light most favorable to Vassell.

standard); *State v. Henderson*, 209 Ariz. 300, n.4, 100 P.3d 911, 916 n.4 (App. 2004) ("plain error" is "the closest analogue to our doctrine of fundamental error"), *vacated in part on other grounds*, 210 Ariz. 561, 115 P.3d 601 (2005).

**¶31** These requirements of Rule 21.2 are neither onerous nor hyper-technical, but instead are based on sound judicial policy. The rule is designed to make an attorney or party contemplate and carefully select or draft proposed instructions before the case closes, and to submit and disclose those instructions before the settlement conference on instructions occurs. *See* Ariz. R. Crim. P. 21.3(a). Compliance with Rule 21.2 thereby ensures that (1) any other party receives adequate disclosure of the instruction, (2) the trial court is afforded the opportunity to carefully consider and rule upon the request, and (3) a reviewing court has a clear, written record of the instruction that was sought. *See Armstrong v. United States*, 228 F.2d 764, 768 (8th Cir. 1956); *cf.* Ariz. R. Evid. 103(a)(2) (requiring party to make record of evidence not admitted at trial to preserve claim for appeal). Placing a specific written instruction on the record also allows specific objections to be made concerning that instruction, as is required by Rule 21.3(c), Ariz. R. Crim. P., to preserve claims of error. *See State v. Toney*, 113 Ariz. 404, 408, 555 P.2d 650, 654 (1976); *State v. Avila*, 141 Ariz. 325, 329, 686 P.2d 1295, 1299 (App. 1984).

**¶32** These benefits of Rule 21.2 impose no countervailing burdens, especially for a criminal defendant. Competent defense counsel will investigate and formulate any defenses, such as self-defense or other justification, long before trial. Indeed, counsel must do so to comply with the duty to disclose defenses under Rule 15.2(b), Ariz. R. Crim. P. By the close of the state's evidence, at the very latest, any such defense theory should be refined and sufficiently articulated so that counsel can "argue the case intelligently to the jury." *United States v. Gaskins*, 849 F.2d 454, 458 (9th Cir. 1988). Demanding a written instruction from a party thus encourages the diligence and detail-oriented approach to a case that should already be observed.

**¶33** Unfortunately, the record here suggests that oral requests for instructions are common practice, at least in Pima County. No pretrial disclosure of defenses is found in our record.

Furthermore, Vassell requested "a justification instruction" orally, not in writing, and without clearly specifying either the statute authorizing the instruction or the language that would comprise it. As a result of his informal practice, the state did not receive the mandatory disclosure of the proposed instruction to which it was entitled under Rule 21.2. Yet the state made no objection to the lack of a written instruction or the disclosure thereof, and the trial court did not base its ruling on any of these deficiencies.

¶34 While neither trial courts nor parties may be inclined to observe the requirements of Rule 21.2, we are all bound by the rules of procedure promulgated by our supreme court and cannot disregard or modify them. *See Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 10, 189 P.3d 344, 347 (2008). Changes to the rules should occur through the designated rulemaking process. *See Craig v. Craig*, 227 Ariz. 105, ¶ 15, 253 P.3d 624, 626 (2011).

¶35 Because Vassell failed to propose a written justification instruction in accordance with Rule 21.2, that issue has not been preserved on appeal. *See* Ariz. R. Crim. P. 21.3(c). He therefore has the burden of demonstrating fundamental, prejudicial error to be entitled to relief. *See Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236. And because he did not argue or establish that the alleged error is fundamental, he has not discharged his burden on appeal. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶¶ 16-17, 185 P.3d 135, 140 (App. 2008).

¶36 Contrary to the majority's suggestion, this case does not fall within the limited exception established in *State v. Johnson*, 108 Ariz. 42, 492 P.2d 703 (1972). There, the trial court had raised and rejected the issue of justification *sua sponte* during trial. *Id.* at 43, 492 P.2d at 704. On appeal, the state argued that the defendant could not challenge this ruling because he had failed to submit a written instruction below and, consequently, he had failed to set forth its substance *in haec verba*, as was required by then-existing rules of appellate procedure. *Id.* Our supreme court rejected this waiver argument and found the issue preserved, noting that to propose a written instruction would have been "obviously superfluous" under the circumstances. *Id.* at 44, 492 P.2d at 705.

**¶37**        *Johnson* does not address Rule 21.2, much less establish a precedent that would eviscerate the rule's plain, mandatory terms. The case merely stands for the proposition that a party is not required to undertake a futile act in order to preserve an issue for appeal. *Accord State v. Davis*, 226 Ariz. 97, ¶ 14, 244 P.3d 101, 105 (App. 2010). In such a situation, the failure to comply with a rule may be "excused." *Johnson*, 108 Ariz. at 44, 492 P.2d at 705.

**¶38**        To the extent *Johnson* could stand for a somewhat broader principle, it would be that courts should not blindly apply the rule for requesting jury instructions so as to create "a 'trap for the unwary.'" *United States v. Eiland*, 741 F.2d 738, 742 (5th Cir. 1984), *quoting United States v. Davis*, 583 F.2d 190, 195 (5th Cir. 1978). Unlike in *Johnson*, however, no such trap or excuse is present in this case. Vassell's failure to comply with Rule 21.2 was not precipitated by an adverse ruling from the trial court or any unforeseeable development. He simply elected not to comply with the rules when he made his request. In overlooking that failure, this court renders the express mandatory requirements of Rule 21.2 mere precatory suggestions, subject to the whim of the litigants.

**¶39**        A more analogous and applicable line of Arizona case law establishes that a trial court is entitled to reject an incomplete jury instruction. *State v. Price*, 123 Ariz. 197, 199, 598 P.2d 1016, 1018 (App.), *aff'd in part*, *rev'd in part on other grounds*, 123 Ariz. 166, 166, 168, 598 P.2d 985, 985, 987 (1979); *State v. Salazar*, 24 Ariz. App. 472, 474, 476, 539 P.2d 946, 948, 950 (1975). A court need not parse or rewrite instructions to make them correct, but may reject them entirely based on any defect. *See State v. Parker*, 231 Ariz. 391, ¶ 54, 296 P.3d 54, 68 (2013); *State v. Mitchell*, 204 Ariz. 216, ¶ 22, 62 P.3d 616, 620 (App. 2003). In addition, a party who is dissatisfied with the court's instructions has a duty to submit an alternate proposed instruction to the court. *White v. Mitchell*, 157 Ariz. 523, 527, 759 P.2d 1327, 1331 (App. 1988).[9] Taken together, these precedents confirm what Rule 21.2 strongly implies: parties have the primary obligation

---

        [9] Pursuant to Rule 21.1, Ariz. R. Crim. P., civil case law concerning jury instructions ordinarily applies to criminal cases. *King*, 225 Ariz. 87, ¶ 13, 235 P.3d at 243.

to formulate jury instructions, not the court. Thus, when a defendant argues the trial court failed to independently instruct the jury on an issue, we will grant relief only if the matter was "vital to a proper consideration of the evidence" and the lack of an instruction "constitutes fundamental error." *Avila*, 147 Ariz. at 337, 710 P.2d at 447.

¶40 Here, Vassell's oral request for "a justification instruction" attempted to foist upon the trial court the dual tasks of selecting among the various justification statutes in chapter 4 of title 13 and drafting an accurate jury instruction. Given that our rules and clear jurisprudence entitle a court to reject a properly submitted written instruction on the grounds that it is merely incomplete, I cannot agree that we may overlook the failure to submit any written instruction at all. This is especially so when, as here, the instruction articulates a nuanced justification defense upon which a party's theory of the case will depend.

¶41 The majority's conclusion that Vassell preserved his jury-instruction claim is not supported by Arizona case law, in my view, but rather inconsistent with it. That conclusion also is contrary to clear federal precedent that should guide our interpretation of our substantively identical procedural rule. *See Harper v. Canyon Land Dev., LLC*, 219 Ariz. 535, ¶ 6, 200 P.3d 1032, 1034-35 (App. 2008). For the reasons stated above, I therefore concur only in the judgment affirming the convictions and sentences.