NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

VICTOR MEDINA, *Appellant.*

No. 1 CA-CR 15-0304
FILED 3-17-2016

Appeal from the Superior Court in Yuma County
No. S1400CR201401266
The Honorable David M. Haws, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist
*Counsel for Appellee*

Eugene Marquez, PLC, Tempe
By Eugene Marquez
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Lawrence F. Winthrop joined.

---

**K E S S L E R**, Judge:

**¶1**        Victor Medina appeals his convictions for six counts of aggravated assault and one count of disorderly conduct. Medina argues the trial court erred by declining to instruct the jury on two justification defenses. For the following reasons, we affirm Medina's convictions and sentences.

**FACTUAL AND PROCEDURAL HISTORY[1]**

**¶2**        Medina shot three people at the end of an altercation that took place at three locations. The first fight took place in front of a house in which "S," "Brother," and "Brother-in-law" lived with several other people.[2] S was in front of the house unloading items from the trunk of his car when Medina drove up in his car. S approached Medina to greet him, but Medina began to argue with S and made various accusations. S eventually told Medina to leave but Medina refused. Medina and another person from Medina's car then attacked and beat S. Medina and his friend eventually left. As he did so, Medina told S, "I'm going to kill your fucking family." S immediately gathered Brother and Brother-in-law and drove towards Medina's house, which was a short distance away. They wanted to "confront" Medina about why he attacked S. Brother brought a handgun. S and Brother's father ("Father") heard the commotion from nearby and Father followed them in his own car.

**¶3**        The second fight took place moments later a few blocks away in the middle of the street. The second fight was captured by two video cameras. S caught up to Medina and they stopped their cars side by side in the street. Father stopped further back. Everyone exited their cars and

---

[1] "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12 (1998).

[2] Medina's presence at the first location also violated a court order.

Brother fought Medina and S fought Medina's friend. Brother-in-law did not fight anyone. Brother left his gun in the car throughout the second fight. The group eventually stopped fighting but continued to argue. Medina eventually got in his car and started to drive away. S believed everything was over and got back in his car. Brother also got in the car and Brother-in-law stood beside the car behind the open front passenger door. Medina then turned his car around a short distance away, drove towards S's car and intentionally struck the open passenger door. This caused the door to strike Brother-in-law. Medina then drove to his house a short distance away, parked in the street, and walked towards his house. Brother-in-law got in Father's car thinking everyone would simply leave.

¶4 The third and final portion of the incident took place in front of Medina's house and was also captured on video. S immediately drove to Medina's house with Brother because S was angry that Medina hit his car door. Father and Brother-in-law followed S in Father's car. When S arrived at Medina's house, S intentionally ran into Medina's parked car and parked beside it. S testified he had no intent to harm Medina because Medina was already out of his car. S simply wanted to damage Medina's car in retaliation for the damage Medina caused to S's car.

¶5 After S hit Medina's car, Medina and several members of his family approached the two cars. Medina's brother was armed with a handgun. Medina asked for the gun but his brother refused to give it to him. S and Brother-in-law got out of their cars and S spoke to Medina, Medina's mother, and Medina's brother. Father stood back and observed. Brother remained in the back seat of S's car with his gun either on his lap or beside him. He did not point the gun at Medina and claimed he never took the gun out nor pointed it out of the car. While the video reveals much arguing and discussion among the participants, nobody fought at this time.

¶6 At some point, Medina came to S's car where Brother sat, leaned into the back seat through the open door and tried to take Brother's gun from him. The video shows none of the other participants were fighting at this point and it is not clear anyone knew Medina was trying to get Brother's gun. Medina's brother eventually leaned into the back seat, pointed his gun at Brother and told him to let go of the gun, which Brother did. Medina took Brother's gun, backed away from the cars and pointed the gun towards S, Brother, and Brother-in-law. Medina's mother thought Medina grabbed the gun from Brother because Brother was pointing it at someone, but she did not know who, if anyone, Brother pointed the gun at.

¶7　　　　Medina's family immediately approached Medina and tried to calm him, told him to put the gun down and tried to prevent him from approaching S, Brother, and Brother-in-law with the gun. S, Brother, and Brother-in-law, all of whom were unarmed, moved away from Medina and his family. Medina, however, raised the gun, raced past his family, past Father and ran towards S, Brother, and Brother-in-law. Medina ignored Father, who was standing at the open trunk of his car with his back to Medina as Medina went past him. Medina then struck Brother over the head with the gun and the gun discharged. Medina then went to S and struck him over the head with the gun, causing it to discharge a second time. Seconds later, Father approached Medina and struck him in the head with a machete he had just retrieved from the trunk of his car. Father testified he did so to protect himself and his family from Medina. Medina then shot Father just below the sternum. Brother tackled Medina after he shot Father, but Medina continued to fire. At some point, Medina shot Brother in the shoulder. It is not clear, however, whether Medina shot Brother after Father struck Medina with the machete or if Brother was struck by one of the first two shots. Brother and Father testified that Father did not strike Medina with the machete until after Medina shot Brother. Brother-in-law did not participate in the final altercation, but was simply standing nearby when Medina shot him in the abdomen.

¶8　　　　Medina did not testify at trial, however, the officer that questioned Medina testified that Medina told police he shot the victims in self-defense after they attacked him and an unidentified person shot at him. He never told police he was defending anyone other than himself. In his motion for judgment of acquittal, Medina argued only that he acted in self-defense. Medina's counsel argued Medina "felt and reasonably felt that he was being threatened and he was defending himself," "was defending himself from a perceived attack," and "[n]o reasonable jury could find otherwise." Counsel also argued Medina had "a reasonable perceived belief that he needed to use deadly force and defend himself and he did." Medina never argued that he was defending anyone other than himself. He also never argued he shot the victims in an effort to stop an aggravated assault.

¶9　　　　It was not until the discussion of the final jury instructions that Medina argued for the first time that he was defending his family and/or preventing an aggravated assault. Medina's counsel argued Medina felt the same fear for his family's safety that he felt for his own safety. He further argued that S and his "family" committed an aggravated assault when S drove his car into Medina's car while Medina was standing nearby. Medina argued it was, therefore, reasonable for Medina to believe

that another aggravated assault was likely and Medina did what was necessary to prevent another assault by the people who rammed his car.

¶10         The trial court found the evidence supported Medina's requested instruction on self-defense, but did not support Medina's requested instructions on defense of a third person or use of force in crime prevention. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-404(A) (2010) (self-defense); -406 (Supp. 2015) (defense of a third person); -411 (Supp. 2015) (crime prevention). The trial court found there was no evidence of any threat or use of deadly force against any third person, nor was there any evidence of any aggravated assault Medina defended against.

¶11         A jury found Medina guilty as charged and the trial court sentenced him to concurrent terms of eighteen years' imprisonment for each count of aggravated assault and two terms of six months in jail for disorderly conduct and interfering with judicial proceedings.[3] Medina timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (2003), 13-4031 (2010) and 13-4033(A)(1) (2010).

## DISCUSSION

¶12         Medina argues the trial court erred by failing to instruct the jury on the justification defenses of defense of a third person and use of force in crime prevention. Although "we generally review a court's denial of a jury instruction for an abuse of discretion . . . we independently assess whether the evidence supported a justification instruction, because that is a question of law and involves no discretionary factual determination." *State v. Almeida*, 238 Ariz. 77, 80, ¶ 9 (App. 2015).

¶13         A defendant is entitled to a justification instruction when the "slightest evidence" supports the instruction. *State v. Vassell*, 238 Ariz. 281, 284, ¶ 9 (App. 2015). A trial court need not give a justification instruction, however, unless the evidence "reasonably and clearly" supports the instruction. *Id.* An inference that merely makes an argument possible is not the "slightest *evidence*," and "speculation cannot substitute for evidence." *Id*. When there is no physical evidence or testimony to support a theory of justification, a trial court need not give a justification instruction.

---

[3] Medina does not appeal his conviction or sentence for interfering with judicial proceedings.

*State v. Lopez*, 158 Ariz. 258, 265 (1988) ("Because the requested instruction did not fit the facts of the case, it was not error to refuse it.").

¶14 Whether the evidence supports a justification instruction is a question of law and does not involve any discretionary factual determination. *Almeida*, 238 Ariz. at 80, ¶ 9. In our determination of whether the evidence supports a justification instruction, we do not weigh nor resolve conflicts in the evidence and only decide whether the record contains evidence "upon which the jury could rationally sustain the [justification] defense." *Id.*

### A. Defense of a Third Person

¶15 The justification defense applicable when evidence suggests a person was defending another is provided by statute:

> A person is justified in threatening or using physical force or deadly physical force against another to protect a third person if, under the circumstances as a reasonable person would believe them to be, such person would be justified under section 13-404 or 13-405 in threatening or using physical force or deadly physical force to protect himself against the unlawful physical force or deadly physical force a reasonable person would believe is threatening the third person he seeks to protect.

A.R.S. § 13-406.[4] Self-defense is defined in A.R.S. § 13-404(A) which provides in general that a person may threaten to use or use physical force against another person in self-defense "when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force."[5] As to the use of deadly force, A.R.S. § 13-405(A) (Supp. 2015) provides that a person may threaten to use or use deadly physical force against another:

> 1. If such person would be justified in threatening or using physical force against the other [in self-defense], and

---

[4] We cite the current version of applicable statutes unless revisions material to this decision have occurred since the events in question.

[5] We need not address the exceptions found in A.R.S. § 13-404(B).

2. When and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force.

**¶16**　　　　The trial court did not err by declining to instruct the jury regarding Medina's purported defense of a third person because there is no record evidence to support giving the instruction. There is no evidence Medina believed any force, deadly or otherwise, was necessary to protect any third person. Defense counsel's speculation about what Medina believed is not "the slightest evidence," nor evidence at all, and "cannot substitute for evidence." *See Vassell*, 238 Ariz. at 284, ¶ 9 (stating an inference that merely makes an argument possible is not the "slightest evidence"). Moreover, the record belies counsel's claims. *See supra* ¶¶ 8-9. The only evidence of what Medina believed at the time he shot the victims was contained in his statements to police, and he told police he acted only in self-defense.

**¶17**　　　　Further, there is no evidence Medina actually acted to protect a third person. The trial testimony and the video show that S, Brother, and Brother-in-law were unarmed, had fully disengaged from Medina and his family and had moved away from them once Medina got the gun and his family congregated around him. There is no evidence S, Brother, or Brother-in-law were engaging in or were about to engage in unlawful force of any type against anyone when Medina attacked them. Although Medina's trial counsel speculated that Medina saw Father with the machete and believed an attack of some sort was imminent, the video shows that Medina ignored Father as he ran past Father towards S, Brother, and Brother-in-law. The video also shows that Father was standing at the open trunk of his car with his back to Medina when Medina ran right by him and there is no evidence Father had the machete at that time.

**¶18**　　　　Thus, the court did not err because defense counsel's speculation as to what Medina saw or thought and why he chose his course of action, was not sufficient to require the instruction and the evidence did not otherwise give rise to any reasonable inference sufficient to require the instruction.

### B.　　Use of Force in Crime Prevention

**¶19**　　　　Section 13-411(A) defines the justification defense of use of force in crime prevention. This section provides in relevant part that "[a] person is justified in threatening or using both physical force and deadly

physical force against another if and to the extent the person reasonably believes that such force is immediately necessary to prevent the other's commission of . . . aggravated assault" as defined in A.R.S. § 13-1204(A)(1), (2) (Supp. 2015). A.R.S. § 13-411(A). A person commits aggravated assault pursuant to A.R.S. § 13-1204(A)(1) if the person commits assault and causes serious physical injury to another. A person commits aggravated assault pursuant to A.R.S. § 13-1204(A)(2) if the person commits assault with a deadly weapon or dangerous instrument. "A person is presumed to be acting reasonably for the purposes of [A.R.S. § 13-411] if the person is acting to prevent what the person reasonably believes is the imminent or actual commission of any of the offenses listed in subsection A of [A.R.S. § 13-411]." A.R.S. § 13-411(C).

¶20 The trial court did not err by declining to instruct on use of force in crime prevention. "[A] defendant is not entitled to a crime-prevention instruction when his act occurs after a crime has been fully completed, leaving nothing to prevent." *Almeida*, 238 Ariz. at 81, ¶ 14. Regardless of what S, Brother, and Brother-in-law may have done before the final encounter, they withdrew from any confrontation once Medina took Brother's gun from him and the two groups separated. The only confrontational aspect that arguably remained was that S, Brother, and/or Brother-in-law may have been yelling at Medina from a distance as he pointed the gun at them. There is no evidence any of them were committing or were about to commit an aggravated assault before Medina charged and attacked them.

¶21 That Father eventually attacked Medina with a machete while Medina attacked the other victims does not require a different result. We acknowledge that there are circumstances in which a person who acts in self-defense may also be entitled to a jury instruction about the use of force in crime prevention. *See, e.g., State v. Korzep*, 165 Ariz. 490, 494 (1990). Those circumstances are not present here. Medina has never argued that the crime he sought to prevent was an aggravated assault by Father. He argued below that he was entitled to the instruction because he sought to prevent an assault by the people who rammed his car. As previously discussed, the video shows Medina ignored Father as he charged to attack the others and did not act in response to any action of Father at that time. It was only after Medina charged the other three men, attacked one or more of them, and fired his gun twice that Father approached Medina. Although Medina may have been entitled to a self-defense instruction based on Father's use of the machete, the justification defenses of self-defense and use of force in crime prevention protect against different harms. *See Almeida*, 238 Ariz. at 81, ¶ 18. Self-defense is available only when necessary to repel force. *Id*. Use of

force in crime prevention can be available even when not necessary to repel force. *Id*.

**¶22** Here, in the context of justification the only evidence for why Medina shot Father, regardless of the lawfulness of eithers' actions, was to repel the force of Father's attack with a machete. The court did not err because the evidence did not require an additional instruction on use of force in crime prevention in the limited context of Father's actions under these circumstances.[6]

## CONCLUSION

**¶23** For the foregoing reasons, we affirm Medina's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[6] Although these are not the exact grounds upon which the trial court based its ruling, we may affirm on any basis the record supports. *See State v. Robinson*, 153 Ariz. 191, 199 (1987).