NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ZACHARY MADRIL, *Appellant*.

No. 1 CA-CR 24-0415

FILED 05-06-2025

Appeal from the Superior Court in Maricopa County
No.  CR2022-123280-001
The Honorable Joseph Shayne Kiefer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph Newberg
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

------------------------

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Andrew M. Jacobs joined.

------------------------

**B A I L E Y**, Judge:

**¶1**          Zachary Madril appeals his convictions and sentences for armed robbery, assault, and unlawful use of means of transportation.  He argues the superior court erred in (1) denying his motion to suppress his post-arrest police interview and (2) declining to instruct the jury on necessity.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**          Late one evening in June 2022, the victim was working at a business in Mesa, when he stepped outside and went to his company van to do some paperwork.  Madril approached and asked for directions, but the victim stated he was not familiar with the area.

**¶3**          As the victim turned to finish his paperwork, Madril struck him on the head with a hard object[1] and demanded the keys to the van.  The victim refused and, to protect himself, retrieved a handgun from the van.  Madril grabbed at the weapon, and the two men struggled to control the gun.  The victim fell to the ground with Madril on top of him, and the gun, which was under the victim, discharged twice.  A bullet grazed the victim's left arm, and Madril suffered a minor skin tear between his right thumb and forefinger.

**¶4**          Madril beat and choked the victim before wrestling the gun away, then stood up and threatened to kill him if he did not turn over the van's keys.  With the weapon pointed at him, the victim surrendered the keys, and Madril took them and drove away.

**¶5**          Witnesses called 911.  Police located and followed Madril for more than sixty miles as he drove eastbound on the I-10 freeway toward Tucson.  He eventually drove the van into a field and then into an irrigation ditch, where it became disabled.  He fled, but was caught and arrested.

------------------------

[1] Police later found a large rock at the scene.

Police recovered the victim's handgun—containing two spent shell casings—on the ground near the van's driver's-side door.

**¶6**        Police transported Madril back to Mesa, where a police detective interviewed him early that morning. The State later charged Madril with armed robbery, a class 2 dangerous felony; aggravated assault, a class 3 dangerous felony; and theft of means of transportation, a class 3 felony.

**¶7**        The jury found Madril guilty of armed robbery; assault, a class 2 misdemeanor and lesser-included offense of aggravated assault; and unlawful use of means of transportation, a class 5 felony and lesser-included offense of theft of means of transportation. The jury also found three aggravators for the armed robbery, including that it was a dangerous offense, and two for the unlawful use of means of transportation. The superior court sentenced Madril to a minimum term of seven years' imprisonment for the armed robbery, time served for the assault, and two years' supervised probation for the unlawful use of means of transportation.

**¶8**        We have jurisdiction over Madril's timely appeal. *See* Ariz. Const. art. 6, § 9; Ariz. Rev. Stat. ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, 13-4033(A).

## DISCUSSION

I.    Madril's Motion to Suppress His Police Interview

**¶9**        Before trial, Madril moved to suppress his interview with the detective, claiming his statements were involuntary. The superior court held an evidentiary hearing, at which the detective testified, photos of Madril's injuries were received in evidence, and the court considered the recorded interview. The court later denied the motion, and a redacted version of the interview was admitted and played for the jury at trial.

**¶10**        On appeal, Madril argues the superior court erred in denying his motion to suppress because a totality of the circumstances showed his statements were involuntary. We review for an abuse of discretion the denial of a motion to suppress, "considering only evidence admitted at the suppression hearing and viewing it in the light most favorable to sustaining the ruling." *State v. Rushing*, 243 Ariz. 212, 225, ¶ 56 (2017) (citation omitted).

¶11        Confessions are presumed to be involuntary, and the State bears the burden of refuting the presumption and establishing voluntariness by a preponderance of the evidence.  *State v. Hall*, 120 Ariz. 454, 456 (1978).  A confession is involuntary if, under the totality of the circumstances, the will of the defendant was overborne.  *Id.*  In general, a prima facie case for admission of a confession is made when the State shows a confession "was obtained without threat, coercion or promises of immunity or a lesser penalty."  *State v. Jerousek*, 121 Ariz. 420, 424 (1979) (citation omitted).

¶12        A court may consider several factors in evaluating the voluntariness of a defendant's statement, including the time and length of the interrogation, the setting in which it occurs, and the conduct of the police.  *See State v. Doody*, 187 Ariz. 363, 368-69 (App. 1996) (concluding a thirteen-hour interview of a minor without significant breaks, although "troublesome," did not alone establish that officers overcame the suspect's will).

¶13        We have independently reviewed the stipulated audio- and video-recorded interview and other evidence presented at the suppression hearing.  *See State v. Sweeney*, 224 Ariz. 107, 111, ¶ 12 (App. 2010).  Except for the lateness of the hour and the fact that Madril complained he had been unable to get much sleep while staying at his brother's house in the days before the incident, the interview circumstances lack any indica of coerciveness, and we find no abuse of the superior court's discretion.

¶14        Before the interview, Madril was placed in a non-descript room, where he sat on a chair behind a table with water and sports drinks. He became restless, rocked to the side, and slid onto the floor.  The detective came in to confirm he was okay, and Madril stated he was cold and cramping and preferred to sit on the floor, where he stayed throughout much of the interview.  The detective suggested he drink one of the sports drinks and left to get a notepad.

¶15        When he returned, the detective sat at the table and advised Madril of his *Miranda* rights.[2]  Madril affirmed he understood his rights and allowed the detective to interview him.

¶16        The detective interviewed Madril for about thirty minutes—between about 3:30 and 4:00 a.m.—and less than four hours after his arrest. No other officers were present during the interview, no physical or verbal

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

threats or promises of any kind were made, and the detective's tone was conversational and non-confrontational throughout.

¶17 During the interview, Madril explained his actions as a product of his lack of sleep over several days due to "detoxing" from crystal methamphetamine and living with his brother's noisy family, his desire to go home to his family in Rio Rico, and his stress over financial obligations. But he never indicated he wanted to end or take a break from the interview, and he never asked for more to drink, food, a restroom, medical care, or to sleep. *See State v. Scott*, 177 Ariz. 131, 136-37 (1993) (concluding that a failure to ask for food, medication, or sleep, coupled with a lack of evidence that any request would not be granted, satisfied the State's burden to establish the voluntariness of a confession). He also never appeared to be falling asleep or needed to be prompted to answer questions, and much like the defendant in *State v. Anderson*, nothing indicates the police would have denied him the opportunity to rest or sleep had he requested it. *See* 197 Ariz. 314, 326-27, ¶ 35 (2000). Viewed in context, his answers were appropriate, as was his engagement with the detective, and he offered details about the incident, stressed he did not plan to steal the van or hurt the victim, and stated he had "never done anything like this before."

¶18 After the interview, Madril agreed to allow a police photographer to take photos of his injuries, and he appeared eager to help. He was then asked to provide a buccal swab of his saliva, but after a brief discussion, he refused the request, demonstrating his will was not overborne from lack of sleep or any "physical or psychological pressure exerted by the police." *State v. Tucker*, 157 Ariz. 433, 445 (1988). All told, Madril interacted with law enforcement officials for just less than one hour.

¶19 Although Madril expressed several times that he had recently had trouble sleeping, he never said he was too tired to engage in or continue the interview. Moreover, law enforcement officials played no role in his lack of sleep before the interview, which was consistent with Madril's explanation as to his use of crystal methamphetamine, and Madril has failed to show the police engaged in any coercive activity. *See generally Colorado v. Connelly*, 479 U.S. 157, 167 (1986). Instead, the State has demonstrated Madril's statements to the detective were voluntary under the totality of the circumstances. Accordingly, the superior court did not abuse its discretion when it denied Madril's motion to suppress his police interview.

II.      Madril's Request for a Necessity Instruction

¶20      At trial, Madril testified and admitted pointing the gun at the victim and demanding the keys to the van.  However, he claimed he did so because his fight with the victim and the gunshots made him panic, he was not sure if the victim had another weapon, and the victim, by yelling for help, was wrongly portraying himself as the victim.  Based on this testimony, Madril requested instructions on self-defense, duress, and necessity, but the State objected to the duress and necessity instructions, arguing any danger ended when Madril gained control of the gun and Madril had reasonable alternatives to stealing the van at gunpoint.  The superior court denied the duress and necessity instructions after concluding, as to necessity, that once he had the gun, Madril had reasonable alternatives to stealing the van, but it instructed the jury on self-defense and the use of force in crime prevention.  The court also later denied Madril's motion for a new trial based on denial of the necessity instruction.

¶21      On appeal, Madril argues the superior court erred in denying his requested necessity instruction.  He maintains his testimony demonstrated he had no reasonable alternative but to escape the situation immediately.

¶22      We review for abuse of discretion the superior court's decision whether to provide a jury instruction, *State v. Bolton*, 182 Ariz. 290, 309 (1995), and whether to grant a new trial, *State v. Fischer*, 242 Ariz. 44, 48 ¶ 10 (2017).  But we independently assess whether the evidence supports a necessity instruction, because that is a question of law.  *State v. Pina-Barajas*, 244 Ariz. 106, 108, ¶ 4 (App. 2018) (citation omitted).  In our review, "[w]e view the evidence in the light most favorable to the party requesting a jury instruction."  *Id.* at ¶ 2 (citation omitted).

¶23      "A defendant is entitled to an instruction on any theory of the case reasonably supported by the evidence."  *State v. Richter*, 245 Ariz. 1, 6, ¶ 24 (2018) (quoting *State v. Lujan*, 136 Ariz. 102, 104 (1983)).  Generally, a defendant is entitled to a justification instruction if the record contains the "slightest evidence" of justification.  *State v. King*, 225 Ariz. 87, 90, ¶ 14 (2010).  "The slightest *evidence*—not merely an inference making an argument possible—is required because speculation cannot substitute for evidence."  *State v. Vassell*, 238 Ariz. 281, 284, ¶ 9 (App. 2015) (citations omitted).

¶24      Justification defenses use "objective standards that depend on the beliefs of a 'reasonable person' in the defendant's circumstances rather

than the defendant's subjective beliefs." *State v. Carson*, 243 Ariz. 463, 465, ¶ 9 (2018) (citing *King*, 225 Ariz. at 90, ¶¶ 11–12). "A person is justified in using physical force against another, and does not commit a crime, 'when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force.'" *Id.* (quoting A.R.S. § 13–404(A)). "[D]eadly force is justifiably used if § 13–404 is satisfied and 'a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force.'" *Id.* (quoting A.R.S. § 13–405(A)(2)).

¶25 The necessity defense statute provides: "Conduct that would otherwise constitute an offense is justified if a reasonable person was compelled to engage in the proscribed conduct and the person had no reasonable alternative to avoid imminent public or private injury greater than the injury that might reasonably result from the person's own conduct." A.R.S. § 13–417(A).[3] Thus, for a necessity defense to apply, a defendant must show the risk of injury is imminent—i.e., immediate or about to occur—and the person at risk has no reasonable alternative to avoid an injury short of violating the law. *Pina-Barajas*, 244 Ariz. at 108–09, ¶¶ 5–7. Further, "justification based on imminent or immediate threats dissipates rapidly," such that, "as time elapses, other reasonable, legal courses of action become increasingly available" to a reasonable person. *Id.* at ¶¶ 6–7.

¶26 Here, overwhelming evidence indicates Madril placed himself in the circumstances that led to his conduct, thus forfeiting any necessity defense. *See* A.R.S. § 13-417(B)-(C). But even assuming he did not and viewing the evidence in the light most favorable to Madril, once Madril seized the weapon with the much older victim subdued and lying on the ground with substantial injuries, there was no longer any threat to him. And although Madril speculated the victim might have had another weapon, speculation about a threat is not evidence of one. *See Vassell*, 238 Ariz. at 281, ¶ 9. Neither was Madril's concern that the victim might portray himself as the victim and that witnesses and police might believe the victim over him. Madril's own testimony shows he took the van at gunpoint not because he faced what a reasonable person would consider an

---

[3] A defendant may not assert a necessity defense if he intentionally, knowingly or recklessly placed himself in the situation in which it was probable he would have to engage in the proscribed conduct. A.R.S. § 13-417(B).

objective imminent threat, but because of his own subjective beliefs. *See Carson*, 243 Ariz. at 465, ¶ 9.

**¶27** Moreover, the record does not support Madril's subjective belief that he had no reasonable alternatives to avoid an injury short of violating the law. Madril produced no evidence that he could not have called 911, commanded the victim to remain on the ground until the police or other help arrived, or retreated to a place of safety. Instead, he chose to steal the van at gunpoint, and his own testimony supports that he made his bad decisions out of panic, not out of necessity. His subjective belief that breaking the law was his only alternative was neither reasonable nor enough to entitle him to an instruction on necessity. The superior court did not abuse its discretion because the evidence did not support Madril's necessity instruction.

## CONCLUSION

**¶28** Madril's convictions and sentences are affirmed.

