722 P.2d 243

**STATE of Arizona, Appellee,**

v.

**William Allen PLEW, Jr., Appellant.**

**No. 6690.**

Supreme Court of Arizona,
En Banc.

June 19, 1986.

---

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Div., Phoenix, and Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Daniel F. Davis, Tucson, for appellant.

GORDON, Vice Chief Justice.

William Allen Plew, Jr. was convicted of attempted second degree murder, A.R.S. §§ 13–1001 and –1104, and of aggravated assault, A.R.S. § 13–1204. It was alleged and proven that these offenses were of a dangerous nature and were committed while on parole. Consequently, the appellant was sentenced to life imprisonment by authority of A.R.S. § 13–604.01 (now § 13–604.02). We have jurisdiction pursuant to Arizona Const. art. 6 § 5(3) and A.R.S. §§ 13–4033 and –4035.

On September 19, 1983, a shooting occurred at the home of the victim, Joseph Molina. Molina was shot five times with a small caliber handgun, but the two versions of how the shots came to be fired were diametrically opposed. The appellant, testifying on his own behalf, claimed that Molina was angry and abusive over Plew's cocaine debts and threatened him with a gun. The appellant testified that he then grabbed the gun and struggled with Molina, during which the gun went off and "just kept going off." In contrast, Molina testified that the appellant, without provocation, simply pulled out a gun and shot him five times.

Everyone agreed that the appellant purchased cocaine from Molina, but as with most of the evidence in the case the facts were sharply disputed. The appellant testified that he bought cocaine from Molina frequently—indeed, three times the day of the shooting—while Molina maintained that sales were infrequent. In any event, the shooting arose out of a dispute over money owed by appellant to Molina for cocaine. The state charged appellant with attempted first degree murder and aggravated assault; the appellant relied upon a self-defense argument. At the close of evidence the defense offered four possible jury in-

structions on self-defense; all were denied by the trial judge as unsupported by the evidence. Appellant was subsequently convicted of attempted second degree murder, a lesser included offense of attempted first degree murder, and of aggravated assault. The appellant now urges that the trial court's refusal to give a self-defense instruction constitutes reversible error.

The law in Arizona regarding self-defense is well-established. A self-defense instruction must be given if the accused can demonstrate that 1) he reasonably believed that he was in immediate physical danger; 2) he acted solely because of his belief; and 3) he used no more force than appeared reasonably necessary under the circumstances. *State v. Noriega,* 142 Ariz. 474, 482, 690 P.2d 775, 783 (1984). The defendant's own testimony can raise the inference of self-defense, *State v. Lujan,* 136 Ariz. 102, 104, 664 P.2d 646, 648 (1983), even if the evidence is in conflict on this issue. *State v. Noriega,* 142 Ariz. at 482, 690 P.2d at 783. Moreover, a defendant is entitled to a self-defense instruction "whenever there is the slightest evidence of justification for the defensive act." *State v. Bojorquez,* 138 Ariz. 495, 497, 675 P.2d 1314, 1316 (1984). *Accord, State v. Noriega,* 142 Ariz. at 482, 690 P.2d at 783; *State v. Lujan,* 136 Ariz. at 104, 664 P.2d at 648. The "slightest evidence" is that evidence "tending to prove a hostile demonstration, which may be reasonably regarded as placing the accused apparently in imminent danger of losing [his] life or sustaining great bodily harm...." *State v. Wallace,* 83 Ariz. 220, 223, 319 P.2d 529, 531 (1957).

The appellant stated that he went to Molina's house that night in order to pay for some cocaine, and that while there Molina became verbally abusive. Upon cross-examination the appellant testified:

"Q So he comes outside with you and he has this gun with him.

A Uh-huh.

Q Are you keeping an eye on the gun?

A I didn't even notice it at first, sir. I didn't notice it till he brought it up.

Q What did he do when he brought it up, point it at you?

A He is pointing it but it is shaking like this (indicating). And he starts talking all this stuff and telling me about I don't know who he is and that an informant in his case against him had an accident, a car accident, they think it is an accident, that I don't know who he is or what he can do.

And at that time I knew my heart started pounding. *I knew he was going to shoot me.*

Q How did you know?

A I just felt it. I have been in a situation where—I have been stabbed and I know how it feels when you know that your life is about to be taken away from you.

Q So was the gun pointed at you or pointed someplace else?

A It's pointing at me, sir. He has it like that (indicating).

Q How close together are the two of you?

A About—I am about right here and he is about right where she is at.

Q Okay.

Is his finger on the trigger?

A I'm just noticing how the gun is, sir. I know he has a grip on it.

Q And what did you do?

A Pardon me?

Q What did you do?

A I turned to the side. Well, I was already moving to the side like that and I—and he is just rambling on like this and like this.

I am telling him, Joe, what is wrong, you know, I ain't done nothing, you know.

*And I reach out like that and I grab it. When I spin around, I come up like this and he comes at me. And he is trying to take it back and it just went off. It just kept going off.*"

(emphases added)

This testimony by the appellant, if viewed in isolation, would supply the quantum of evidence necessary to support a

claim of self-defense and allow us to conclude without further analysis that the trial court erred in denying a self-defense instruction. However, the state maintains that other testimony by the appellant himself defeats the claim of self-defense.

"A ...

And when it first went off, I thought I had been shot. I thought I had been shot.

It just happened so fast. And then he was right there. And I was standing right there and I was looking at him and I said, Why, why, Joe.

And he got up and he ran.

Q Which finger did you pull the trigger with?

A *I didn't pull the trigger, sir.* I had it just like that and he came after and he was trying to take it and it went off just like a pow, pow, pow, pow. I don't know how many times. I went into a daze it seemed like.

Q *So you never pulled the trigger on that gun?*

A *No, sir.*

Q *Never aimed it at him?*

A *No, sir.*

Q Did you ever point it at him?

A No, sir, I never had no gun and I never had no possession of that gun.

Q *You didn't want to shoot him?*

A *No, sir.*

Q You weren't shooting him to defend yourself, then, were you?

A I don't understand what you are saying, sir.

Q It was an accident, is that what you are saying?

A I am saying that I know I had the gun like that and he tried to take it and it went off. I don't know if he is the one that his finger went in there and pulled it or what, it just happened so fast.

*But I didn't go there with no gun and I had no intentions to harm Mr. Molina.*

Q And you didn't pull the trigger.

A No, sir.

Q Well, did you think it was him that pulled the trigger?

A Sir, I don't know. I just know that that's how it happened. That's exactly how it happened. And Joe Molina knows that."

(emphases added)

The state asserts that this testimony by appellant precludes a claim of self-defense because the appellant denies assaultive behavior or any intent to harm Molina. *See State v. Miller,* 129 Ariz. 42, 628 P.2d 590 (App.1981). A defendant who denies shooting the victim may not thereafter claim self-defense. *State v. Dixon,* 15 Ariz.App. 62, 485 P.2d 1179 (1971). However, the record in this respect is more notable for its ambiguity than its clarity. While the appellant does indeed deny shooting the victim or intending any harm, he also states several times that he is unsure of exactly what transpired. His testimony throughout the cross-examination is ambivalent on this point.[1]

It is not our function to re-weigh the evidence on appeal; and our resolution of this case does not require us to believe or disbelieve the appellant's testimony. The only issue we need address is whether the appellant presented the "slightest evidence" of self-defense at trial. Because we believe that the requisite modicum of evidence was presented, we must reverse the appellant's convictions. The case is remanded to the trial court for proceedings not inconsistent with this opinion.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

1. In any event, the state's focus on the actual shooting may be misdirected. The critical inquiry may be whether the appellant initiated the struggle for the gun if the resulting discharges—whether intended or not—were simply a natural consequence of the struggle.