IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

|  |  |  |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2004-0063 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| RENEE SUE RUGGIERO, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20021507

Honorable Richard S. Fields, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Robert A. Walsh
Phoenix
Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Lisa M. Hise
Tucson
Attorneys for Appellant

P E L A N D E R, Chief Judge.

¶1　　　　After a jury trial, appellant Renee Sue Ruggiero was convicted of manslaughter and sentenced to an aggravated, fourteen-year prison term. On appeal, she argues the trial court erred in refusing to give a requested jury instruction and denying her related motion for new trial, in admitting certain evidence at trial, and in imposing an aggravated sentence in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2351 (2004). Finding no reversible error, we affirm.

## BACKGROUND

¶2　　　　We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the conviction. *See State v. Riley*, 196 Ariz. 40, ¶ 2, 992 P.2d 1135, 1137 (App. 1999). In March 2002, Ruggiero moved into a mobile home with her sixteen-year-old son (Mark), daughter (B.), and B.'s boyfriend (D.). B. was then thirteen or fourteen years old, and D. was twenty-eight. Shortly after they moved in, B. told Ruggiero that she was pregnant with D.'s child. Ruggiero did not report D. to the police, apparently because B. threatened to run away or commit suicide, but she decided that D. would have to leave the home.

¶3　　　　Ruggiero then went to a local tattoo parlor to "see if a bunch of the guys could kind of get together and back [her] up just to get [D.] out of [her] house, get him away from [her] daughter." Several people from the tattoo shop, along with Ruggiero and her son Mark, then returned to the mobile home to evict D. When they arrived, Mark kicked in the

2

door and, once inside, they found D. and B. in bed together, asleep and naked. Ruggiero told D. to leave, and he got up and dressed, while B. remained in the bedroom.

¶4        Scott Soto, one of Ruggiero's friends from the tattoo shop, took a loaded rifle from her closet, and he and Mark ordered D. to move into the kitchen area and eventually outside onto the porch. A ride was arranged for D., but the driver requested that he be bound "because they were nervous about having [D.] in their vehicle." Mark testified that he then had heard a shot and had seen his mother holding the rifle as D. was lying on the kitchen floor, at least partially bound with duct tape. As Ruggiero kept the rifle pointed at D., Mark and Soto then bound D. with more duct tape, beat him, shocked him with a "Tazer gun," and left him on the kitchen floor, where he eventually died. Two more of Ruggiero's friends arrived to find D. dead on the kitchen floor and helped move his body outside to a brick pit on the property, where they covered it with nearby debris.

¶5        After D.'s body was discovered a few days later, Ruggiero, Soto and Mark were arrested and charged with kidnapping and first-degree murder.[1] A jury found Ruggiero not guilty of those charges but guilty of manslaughter, a lesser-included offense of first-degree murder. She was sentenced to an aggravated, fourteen-year prison term.

---

[1]Ruggiero's case was severed from those of her codefendants.

**DISCUSSION**

## I. Jury instruction

¶6      Ruggiero argues the "trial court erred in denying [her] motion for new trial," which was based on the court's prior ruling "denying [her] requested jury instruction on justification to prevent child molestation." We review a trial court's denial of a motion for new trial for an abuse of discretion. *State v. Hoskins*, 199 Ariz. 127, ¶ 52, 14 P.3d 997, 1012 (2000). Refusing a jury instruction is likewise within a trial court's discretion, and we will not reverse on that ground absent a clear abuse of that discretion and resulting prejudice. *State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995); *State v. Islas*, 132 Ariz. 590, 591, 647 P.2d 1188, 1189 (App. 1982).

¶7      Ruggiero requested a justification instruction pursuant to A.R.S. § 13-411, which provides in pertinent part:

> A.  A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of . . . sexual conduct with a minor under § 13-1405, . . . [or] child molestation under § 13-1410.
>
> B.  There is no duty to retreat before threatening or using deadly physical force justified by subsection A of this section.
> C.  A person is presumed to be acting reasonably for the purposes of this section if he is acting to prevent the commission of any of the offenses listed in subsection A of this section.

Over the state's objection, the trial court gave a justification instruction under that statute, but only as to sexual conduct with a minor and not as to child molestation.

¶8        Sexual conduct with a minor is defined as "intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." A.R.S. § 13-1405(A). Child molestation, however, is defined as "intentionally or knowingly engaging in or causing a person to engage in sexual contact, except sexual contact with the female breast, with a child under fifteen years of age." A.R.S. § 13-1410(A). "Sexual contact" is "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact." A.R.S. § 13-1401(2).

¶9        It is undisputed that when Ruggiero and the others arrived at her residence, they found D. and B. naked and sleeping in the same bed. Evidence also was presented that D. had shaved B.'s pubic hair. Ruggiero argues that the jury could have found that D. had been committing child molestation and that her actions had been justified to prevent it even though, as the prosecution argued in closing, no "sexual conduct with a minor" had occurred at the time D. was killed.

¶10        As Ruggiero correctly argues, "a defendant is entitled to a justification instruction if it is supported by 'the slightest evidence.'" *State v. Hussain*, 189 Ariz. 336, 337, 942 P.2d 1168, 1169 (App. 1997), *quoting State v. Dumaine*, 162 Ariz. 392, 404, 783 P.2d 1184, 1196 (1989). An instruction should not be given, however, "unless it is

5

reasonably and clearly supported by the evidence." *State v. Walters*, 155 Ariz. 548, 553, 748 P.2d 777, 782 (App. 1987).

¶11        "A defendant who disclaims any assaultive behavior on his part is not entitled to a self defense instruction." *State v. Miller*, 129 Ariz. 42, 43, 628 P.2d 590, 591 (App. 1981). In her reply brief, Ruggiero cites *State v. Wright*, 163 Ariz. 184, 786 P.2d 1035 (App. 1989), and *State v. Plew*, 150 Ariz. 75, 722 P.2d 243 (1986), for the proposition that she could deny having killed D. and still have been entitled to a justification instruction. We disagree. In fact, the *Plew* court stated, "[a] defendant who denies shooting the victim may not thereafter claim self-defense." 150 Ariz. at 78, 722 P.2d at 246. A justification instruction was warranted in both that case and in *Wright* because the defendant, although not admitting assaultive behavior, did not directly deny it. *Id.* ("While the appellant does indeed deny shooting the victim or intending any harm, he also states several times that he is unsure of exactly what transpired. His testimony throughout the cross-examination is ambivalent on this point."); *see also Wright*, 163 Ariz. at 186, 786 P.2d at 1037 (self-defense and defense-of-third-person instruction warranted where defendant claimed to not remember what had happened). Here, however, Ruggiero repeatedly and directly denied having shot D. Therefore, as the state points out, she was not entitled to any justification instruction. *See Miller*, 129 Ariz. at 43, 628 P.2d at 591.

¶12        Furthermore, contrary to Ruggiero's assertions, the evidence at trial did not show that deadly force was "immediately necessary to prevent" D. from molesting B. or that

6

Ruggiero had "reasonably believe[d]" that to be so. § 13-411(A). As the state points out, D. and B. "had been moved to separate rooms and were not engaged in sexual activity when deadly physical force was used." In fact, D. got out of the bed willingly and even left the mobile home at one point before he was killed. Moreover, according to Mark's testimony, at the time D. was shot he was at least partially bound with duct tape, certainly in no position to molest B. And, as the state also observes, no evidence "demonstrate[d] that [D.] had recently shaved [B.]'s pubic hair."

¶13  In sum, because she unequivocally denied having shot D., Ruggiero was not entitled to any justification instruction, nor did the evidence support her justification defense based on child molestation. *See* § 13-411(A); *Miller*, 129 Ariz. at 43, 628 P.2d at 591. Therefore, the trial court did not abuse its discretion in denying her requested instruction and her related motion for a new trial.

## II. Rebuttal evidence

¶14  At trial, Ruggiero sought to introduce an exculpatory, hearsay statement through witness J., Soto's former girlfriend. Over the state's objection, the trial court ruled that J.'s proffered testimony that Soto had told her that he had killed the victim was admissible as a statement against penal interest, and J. so testified. *See* Ariz. R. Evid. 804(b)(3), 17A A.R.S. In response, relying on Rule 806, Ariz. R. Evid., the state sought to introduce a police lieutenant's rebuttal testimony that Soto had told him in a pre-arrest

interview Ruggiero in fact had shot the victim. Over Ruggiero's objection, the trial court permitted the lieutenant to so testify for purposes of rebutting J.'s testimony.

**¶15** Ruggiero contends admission of that hearsay evidence violated her rights under the Sixth Amendment's Confrontation Clause. U.S. Const. amend. VI. "We review the admission or exclusion of evidence for abuse of discretion." *State v. Davis*, 205 Ariz. 174, ¶ 23, 68 P.3d 127, 131 (App. 2002). We review a trial court's determination of a Confrontation Clause violation de novo. *State v. Blackman*, 201 Ariz. 527, ¶ 41, 38 P.3d 1192, 1203 (App. 2002).

**¶16** In admitting the lieutenant's rebuttal testimony, the trial court noted that evidence would have a "very limited use" and would not be unfairly prejudicial. In addition, immediately after that testimony, the court gave a limiting instruction, telling the jurors they could only consider Soto's statement to the lieutenant to determine the credibility of Soto's prior hearsay statement about which J. testified, and not as evidence of Ruggiero's guilt or of the truth of the matter asserted in Soto's latter statement. The trial court repeated that limiting instruction at the end of the case, again telling the jurors to consider Soto's out-of-court statement to the lieutenant for impeachment purposes only. And, both parties emphasized that restricted use of the evidence in their closing arguments.

**¶17** The trial court's admission of the evidence in question was authorized under Rule 806, Ariz. R. Evid., which provides in pertinent part: "When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked . . . by any

8

evidence which would be admissible for those purposes if declarant had testified as a witness." Had the declarant, Soto, testified at Ruggiero's trial that he had shot the victim, as he allegedly had told his former girlfriend, J., the state could have introduced evidence of Soto's non-hearsay, inconsistent statement. *See* Ariz. R. Evid. 801(d)(1)(A). Ruggiero does not argue otherwise.

¶18 Relying on *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), and *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), however, Ruggiero argues the trial court's admission of the lieutenant's rebuttal testimony about Soto's statement to him "violated [her] right to confront and cross-examine witnesses and is reversible error." We disagree.

¶19 The court in *Bruton* found a violation of the defendant's right of confrontation, despite a limiting instruction having been given, when a codefendant's confession was admitted but the codefendant did not testify and, therefore, was not subject to cross-examination. In *Crawford*, the Court conditioned the admission of "testimonial" out-of-court statements against a defendant upon proof that (1) the witness who made the statement is unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 68, 124 S. Ct. at 1374. As the state correctly points out, neither *Bruton* nor *Crawford* is controlling here because the state introduced the lieutenant's rebuttal testimony about Soto's out-of-court statement not to prove that Ruggiero had killed the victim, but solely to impeach Soto's prior statement to his girlfriend that he had done so.

9

**¶20** In *Crawford*, the Court recognized the well-established principle that "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n.9, 124 S. Ct. at 1369 n.9; *see also Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 2081-82, 85 L. Ed. 2d 425, 431 (1985) ("The *non-hearsay* aspect of [an accomplice's] confession—not to prove what happened at the murder scene but to prove what happened when [defendant] confessed—raises no Confrontation Clause concerns."). Although Ruggiero seeks to distinguish *Street* on its facts, as *Crawford* makes clear, the foregoing principle remains intact and applies here.

**¶21** In an analogous situation in which the state sought to introduce evidence of a non-testifying, codefendant's statement to police, which inculpated defendant, to impeach another statement by that same codefendant that "he was solely responsible for the killings," our supreme court stated:

> At retrial, if the State again seeks to admit [non-testifying codefendant] Prasertphong's statement to the police [that defendant was primarily to blame for the murders], the trial court may admit the statement only for the limited purpose of impeachment. The express purpose of Rule 806 is to allow a party to attack the "credibility" of the hearsay declarant. By its terms, the rule's limited purpose is impeachment. But to satisfy the Confrontation Clause, if the trial court decides to permit the introduction of Prasertphong's statement to the police, the court must instruct the jury as to the limited purpose for which Prasertphong's statement is introduced.

*State v. Huerstel*, 206 Ariz. 93, ¶¶ 40, 42, 75 P.3d 698, 708, 709 (2003) (citations omitted); *see also State v. Sego*, 629 A.2d 1362, 1366-67 (N.J. Super. Ct. App. Div. 1993) (upholding state's impeachment of credibility of codefendant's out-of-court statements exculpating defendant with another extrajudicial statement that incriminated defendant because jury needed both statements to evaluate codefendant declarant's credibility, and because state would have been allowed to use inconsistent statement to impeach codefendant had he testified at defendant's trial); *People v. Buckman*, 508 N.Y.S.2d 756, 757 (N.Y. App. Div. 1986) (same); *State v. Zirkle*, 910 S.W.2d 874, 891 (Tenn. Crim. App. 1995) (same). In view of the limited purpose for which the lieutenant's rebuttal testimony was admitted and the trial court's limiting instructions relating thereto, we find no constitutional error in the court's admission of this evidence.

**¶22**     For the first time in her reply brief,[2] Ruggiero also argues the trial court failed to consider the prejudicial effect of the lieutenant's rebuttal testimony, apparently suggesting the evidence should have been excluded under Rule 403, Ariz. R. Evid. Because the record does not reflect any objection below on that ground, however, Ruggiero waived the argument. *See State v. Gonzales*, 181 Ariz. 502, 511, 892 P.2d 838, 847 (1995) (defendant's failure to object to evidence "on Rule 403 grounds at trial . . . waived his objection"); *State v. Williams*, 209 Ariz. 228, ¶ 22, 99 P.3d 43, 49 (App. 2004) (because

---

[2]Generally an issue raised for the first time in a reply brief is waived. *State v. Guytan*, 192 Ariz. 514, ¶ 15, 968 P.2d 587, 593 (App. 1998). Even if not waived, however, this argument is without merit.

defendant "never made an argument pursuant to Rule 403 below," court "review[ed] only for fundamental error"). Moreover, the record reflects the trial court in fact did consider any prejudicial effect of admitting the evidence and expressly found "no unfair prejudice." We find no abuse of discretion in that ruling. *See State v. Kiper*, 181 Ariz. 62, 65, 887 P.2d 592, 595 (App. 1994) ("Because the trial court is best able to balance the probative value versus the prejudicial effect, it is afforded wide discretion in deciding the admissibility of such evidence.").

## III. *Blakely* issues

¶23        Relying on *Blakely*,[3] Ruggiero also contends she is "entitled to a re-sentencing because the trial court relied on aggravating factors that were not found true beyond a reasonable doubt by the [jury] as required." The trial court found the following aggravating factors: (1) the presence of accomplices; (2) the crime was "carried out in an especially cruel manner"; (3) emotional harm to the victim's family members; and (4) Ruggiero's failure to accept responsibility. The court also found several mitigating factors, including the fact that Ruggiero had no significant criminal history, the "unusual and substantial stress relative to the facts of the case, and the environment of the offense, and including the threat

---

[3]*Blakely* applies to cases such as this that are pending on direct review when *Blakely* was decided. *State v. Cleere*, 210 Ariz. 212, n.2, 109 P.3d 107, 108 n.2 (App. 2005). In addition, "it is now clear that *Blakely*'s analysis and conclusion apply with equal force to Arizona's sentencing structure under § 13-702(B) and (C)." *State v. Aleman*, 210 Ariz. 232, n.6, 109 P.3d 571, 578 n.6 (App. 2005).

to [her] dependents." The trial court found that the aggravating factors outweighed the mitigating factors and imposed an aggravated sentence.[4]

¶24 Preliminarily, the state contends Ruggiero waived any Sixth Amendment challenge to her sentence by failing to assert it in the trial court. But, as our supreme court recently explained: "Defendants who fail to object to error at trial do not, strictly speaking, 'waive' their claims. Rather, defendants who fail to object to an error below forfeit the right to obtain appellate relief unless they prove that fundamental error occurred." *State v. Martinez*, No. CR-04-0435-PR, n.2, 2005 WL 1594394 (Ariz. July 8, 2005); *see also State v. Henderson*, No. CR-04-0442-PR, ¶ 19, 2005 WL 1594359 (Ariz. July 8, 2005) ("Fundamental error review . . . applies when a defendant fails to object to alleged trial error."). Accordingly, we review Ruggiero's claims of fundamental error relating to *Blakely*. *See Henderson*, 2005 WL 1594359, ¶ 1; *see also State v. Aleman*, 210 Ariz. 232, ¶ 24, 109 P.3d 571, 579 (App. 2005); *State v. Thues*, 203 Ariz. 339, ¶ 4, 54 P.3d 368, 369 (App. 2002) ("[i]mposition of an illegal sentence constitutes fundamental error" that is not waived by defendant's failure to raise it).

¶25 Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Henderson*, 2005 WL

---

[4]Ruggiero was sentenced to fourteen years on the manslaughter conviction. The sentencing range for that conviction was between seven years and twenty-one years, with a presumptive term of 10.5 years. A.R.S. §§ 13-604(I), 13-1103(B).

1594359, ¶ 19, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). "[W]e place the burden of persuasion in fundamental error review on the defendant." *Id.* ¶ 19. In order to obtain reversal based on unobjected-to trial error, a defendant must show "both that fundamental error exists and that the error in [his or her] case caused . . . prejudice." *Id.* ¶ 20; *see also Hunter*, 142 Ariz. at 90, 688 P.2d at 982; *State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988).

**¶26**    We agree with Ruggiero that sentencing error occurred in this case. The trial court, not a jury, found the facts used to aggravate her sentence, and the court presumably found those facts under a preponderance-of-the-evidence standard, rather than the standard of proof of beyond a reasonable doubt. *See Henderson*, 2005 WL 1594359, ¶ 25. In addition, none of the aggravating factors was inherent in the jury's verdict or otherwise *Blakely*-exempt or -compliant. Thus, fundamental error occurred. *See id.*

**¶27**    Ruggiero, however, must also demonstrate that the error prejudiced her. *Id.* ¶ 26. She "must show that a reasonable jury, applying the appropriate standard of proof, could have reached a different result [in finding an aggravator] than did the trial judge." *Id.* ¶ 27. We then consider whether at least one aggravator "not subject to such a conclusion" remains to support the aggravated sentence imposed by the trial court. *Id.* ¶ 28; *see also Martinez*, 2005 WL 1594394, ¶¶ 21, 26.

**¶28**    The state argues, and we agree, that "[Ruggiero's] own testimony establish[ed] one of the aggravating facts found by the trial court—the presence of an accomplice,

14

specifically [her son]."[5] An accomplice is "a person . . . who with the intent to promote or facilitate the commission of an offense: . . . [p]rovides means or opportunity to another person to commit the offense." A.R.S. § 13-301. Ruggiero testified that her son Mark had been in the mobile home and that he had helped bind D.'s hands. Mark similarly testified that he had helped bind D., had taken turns holding the gun on him, had "beat[en] him up a little bit" and had "Tazered him." Mark also admitted that he had wanted D. to suffer. In view of this evidence, Ruggiero has not carried her burden to show that the trial court's error in finding the "presence of accomplices" as an aggravating factor prejudiced her. *See* A.R.S. § 13-702(C)(4); *Henderson*, 2005 WL 1594359, ¶ 28.

¶29　　　　Thus, as the state maintains, Ruggiero's aggravated sentence did not violate the Sixth Amendment because, "[i]f . . . additional facts are relevant merely to the exercise of a judge's discretion in determining the specific sentence to impose on a defendant within

---

[5]The state also argues no *Blakely* violation occurred because Ruggiero's own testimony about Mark's involvement in the crime constituted an admission by her that he had been "not only an accomplice, but [D.'s] actual killer." As the state argues, and as our supreme court recently held, "once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute." *State v. Martinez*, No. CR-04-0435-PR, ¶ 26, 2005 WL 1594394 (Ariz. July 8, 2005). But, because Ruggiero consistently denied having participated in killing D., her testimony about Mark's actions and complicity cannot be deemed an admission that she had committed a crime in the "[p]resence of an accomplice." A.R.S. § 13-702(C)(4); *see State v. Resendis-Felix*, 209 Ariz. 292, ¶ 9, 100 P.3d 457, 460 (App. 2004) (defendant "did not admit any of the aggravating factors" the trial court found, including presence of an accomplice, even though record reflected that defendant and an accomplice had stolen victim's vehicle and had assaulted him).

a given statutory sentencing range, the Sixth Amendment permits the judge to find those facts by a preponderance of the evidence." *Martinez*, 2005 WL 1594394, ¶ 26. The trial court, therefore, could properly consider the remaining factors to determine the specific sentence to impose on Ruggiero within the aggravated range.[6]

## DISPOSITION

¶30        Ruggiero's conviction and sentence are affirmed.


_____
                                        JOHN PELANDER, Chief Judge

CONCURRING:


_____
M. JAN FLÓREZ, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge

---

[6]Citing *State v. Carriger*, 143 Ariz. 142, 692 P.2d 991 (1984), Ruggiero also argues that "[t]he trial court committed fundamental error by considering the improper aggravating factor of failure to accept responsibility." But, Ruggiero did not object below and we therefore review this claim for fundamental error. *State v. Henderson*, No. CR-04-0442-PR, ¶ 19, 2005 WL 1594359 (Ariz. July 8, 2005). We agree with Ruggiero that the fact that a defendant "chooses not to publicly admit . . . guilt . . . is irrelevant to a sentencing determination." *Carriger*, 143 Ariz. at 162, 692 P.2d at 1011. But, Ruggiero has not demonstrated how the error prejudiced her and has therefore failed to carry her burden under fundamental error review. *Henderson*, 2005 WL 1594359, ¶ 26.