IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee,*

*v.*

ANTAJUAN STEWART CARSON JR.,
*Appellant.*

No. CR-17-0116-PR
Filed February 27, 2018

Appeal from the Superior Court in Pima County
The Honorable Teresa A. Godoy, Judge Pro Tempore
No. CR20134987-001
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division Two
242 Ariz. 6 (App. 2017)
**VACATED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Joseph T. Maziarz, Chief Counsel, Adele G. Ponce (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Joel Feinman, Pima County Public Defender, Erin K. Sutherland (argued), Assistant Public Defender, Tucson, Attorneys for Antajuan Stewart Carson, Jr.

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER and JUSTICES BRUTINEL, BOLICK, GOULD, and LOPEZ joined.

JUSTICE TIMMER, opinion of the Court:

¶1 Our courts have consistently prohibited a defendant from simultaneously claiming self-defense and asserting a misidentification defense. We now disavow that approach. We hold that if some evidence supports a finding of self-defense, the prosecution must prove its absence, and the trial court must give a requested self-defense jury instruction, even when the defendant asserts a misidentification defense.

**BACKGROUND**

¶2 We view the evidence in the light most favorable to a defendant's request for a self-defense instruction. *See State v. King*, 225 Ariz. 87, 90 ¶ 13 (2010).

¶3 One October night in 2013, Antajuan Carson and victims S.B., J.M., and B.C. attended a house party in Tucson. There was "bad blood" between Carson and J.M., and they unfortunately crossed paths. The two men engaged in a prolonged "fight" inside the house that involved "a whole bunch of people," including S.B., who "had a little conflict going [with Carson]," and lasted five or ten minutes before being broken up. Carson displayed a gun at some point during this confrontation.

¶4 The fight soon resumed outside in what witnesses described as chaotic conditions ("A whole bunch of people were running and arguing, yelling"; "[E]verybody just ran outside, and everybody was pushing") until several people, including J.M. and S.B., "jumped" Carson, hitting and kicking him as he was on the ground. According to one witness, Carson pulled out a gun and "started like swinging it to [J.M. and S.B.]," who responded by physically fighting Carson. Someone yelled, "He has a gun," and people began to run away. Shots were fired, and J.M. and S.B. were shot and killed. B.C. was shot but survived. The gun was never found. But police discovered a bloodied knife on the ground near S.B.'s body at the end of a trail of blood drops, and a second bloodied knife was found tucked

inside S.B.'s belt. Neither was tested for fingerprints or DNA. Carson fled and was later arrested in Michigan.

**¶5** The State charged Carson with two counts of second degree murder and two counts of aggravated assault. During the subsequent jury trial, Carson did not testify. His principal defense was that he was not the shooter. But Carson also requested a self-defense instruction. The trial court denied the request, reasoning "the court legally cannot give a self-defense instruction" because Carson denied he had shot the victims. The jury found Carson guilty on all counts, and the court imposed sentences.

**¶6** The court of appeals reversed the murder convictions and sentences and remanded for a new trial because the trial court had erroneously refused to give a self-defense instruction as to those two victims. *State v. Carson*, 242 Ariz. 6, 12 ¶ 23 (App. 2017). It affirmed the aggravated assault convictions, however, concluding that insufficient evidence supported giving a self-defense instruction regarding Carson's shooting of B.C. *Id.* ¶ 21.

**¶7** We granted review of Carson's petition and the State's cross-petition to decide whether a defendant is entitled to a self-defense instruction while also asserting a misidentification defense, a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

**DISCUSSION**

I. **Simultaneously asserting misidentification and self-defense**

**¶8** We review de novo as a question of law whether a self-defense instruction is available to a defendant who asserts a misidentification defense. *See State v. Rushing*, 243 Ariz. 212, 221 ¶ 36 (2017).

**¶9** A person is justified in using physical force against another, and does not commit a crime, "when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force." A.R.S. §§ 13-205(A) -404(A). Similarly, deadly force is justifiably used if

§ 13-404 is satisfied and "a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force." *Id.* § 13-405(A). These provisions use objective standards that depend on the beliefs of a "reasonable person" in the defendant's circumstances rather than the defendant's subjective beliefs. *See King*, 225 Ariz. at 90 ¶¶ 11–12. "A defendant is entitled to a self-defense instruction if the record contains the 'slightest evidence' that he acted in self defense." *Id.* ¶ 14.

**¶10** For many years, Arizona courts have stated that a defendant may not simultaneously deny physically injuring a victim and claim self-defense. *See, e.g.*, *State v. Plew*, 150 Ariz. 75, 78 (1986) ("A defendant who denies shooting the victim may not thereafter claim self-defense,"); *State v. Williams*, 132 Ariz. 153, 156 (1982) ("[S]imple logic demands that a 'defendant who disclaims any assaultive behavior on his part is not entitled to a self defense instruction.'" (quoting *State v. Miller*, 129 Ariz. 42, 43 (App. 1981))); *State v. Ruggiero*, 211 Ariz. 262, 265 ¶ 11 (App. 2005) ("A defendant who disclaims any assaultive behavior on his part is not entitled to a self defense instruction."(quoting *Miller*, 129 Ariz. at 43)); *State v. Gilfillan*, 196 Ariz. 396, 407 ¶ 40 (App. 2000) ("Given that the defendant denied committing the act with which he was charged, it follows that he could not argue self-defense."); *State v. Dixon*, 15 Ariz. App. 62, 64 (1971) ("It is evident that appellant had completely denied shooting the victim and therefore could not rely on a self-defense instruction."). We now disavow these holdings.

**¶11** Continuing to adhere to the *Plew* line of cases would contradict the legislature's intent about what constitutes criminal conduct. In 2006, the legislature amended Arizona's statutes to declare that actions taken in self-defense transform conduct that would otherwise be criminal into legally permissible conduct. *See* A.R.S. § 13-205(A) (2006) ("Justification defenses . . . are not affirmative defenses. Justification defenses describe conduct that, if not justified, would constitute an offense but, if justified, does not constitute criminal or wrongful conduct."); *see also id.* § 13-103(B) (2006) (describing an "affirmative defense" as a defense that "excuse[s]" criminal conduct and stating that such defenses do not include justification defenses). Once a defendant identifies evidence that a reasonable person would have believed that the use of physical force or deadly physical force was necessary as self-defense under §§ 13-404(A) or

–405(A), "the state must prove beyond a reasonable doubt that the defendant did not act with justification." A.R.S. § 13-205(A). In effect, once sufficient self-defense evidence is admitted, the absence of self-defense becomes an additional element the state must prove to convict. Precluding a defendant who claims misidentification from also asserting self-defense when even the slightest evidence supports his assertion would change the state's burden, thereby contravening the legislature's intent about what conduct is criminal. *Cf. State v. Holle*, 240 Ariz. 300, 307 ¶ 36 (2016) (agreeing that courts cannot add elements to crimes defined by the legislature); *State v. Mott*, 187 Ariz. 536, 541 (1997) (recognizing that the legislature, not this Court, is responsible for promulgating the criminal law).

**¶12** Relatedly, if the evidence supports a self-defense finding but the defendant must admit to being the perpetrator, or at least not deny it, to trigger the prosecution's burden to disprove self-defense, the defendant effectively must give up his right to hold the prosecution to its proof of all elements. *See United States v. Demma*, 523 F.2d 981, 986 (9th Cir. 1975) (concluding that not allowing inconsistent defenses will lead to the defendant "yielding . . . his right to have the Government prove the elements of the crime beyond a reasonable doubt").

**¶13** We are not persuaded by the State's argument that we should continue to adhere to *Plew* and like cases because simultaneously permitting misidentification and justification defenses would perpetuate at least one "lie," thereby "confusing" a jury and undermining its truth-finding function. Just as juries sift through incompatible witness accounts to unearth the truth, they can sort the truth of conflicting defenses. *Cf. State v. Wall*, 212 Ariz. 1, 6 ¶ 30 (2006) (finding evidence sufficient for a lesser-included offense instruction where the "facts were such that the jury could reasonably believe portions of the [witness's] story and portions of the defendant's story"); *State v. Dugan*, 125 Ariz. 194, 196 (1980) (allowing an instruction for a lesser-included offense where the jury may weigh contradictory testimonies and believe parts of each); *State v. Sims*, 99 Ariz. 302, 311 (1965) ("These asserted contradictions and discrepancies are of such a nature as can and usually do occur in the course of most trials where much of the evidence is dependent upon the recollection of witnesses.").

**¶14** And as the State concedes here, a defendant could assert self-defense while simultaneously arguing that the prosecution had failed to

prove he was the perpetrator. *Cf. Ruggiero*, 211 Ariz. at 265 ¶ 11 (noting that justification instructions were warranted in some cases "because the defendant, although not admitting assaultive behavior, did not directly deny it"). If juries are not confused in that circumstance, we do not see why they would be when a defendant affirmatively asserts a misidentification defense. Other jurisdictions have permitted inconsistent defenses without reported turmoil. *See, e.g., Demma*, 523 F.2d at 985 n.6 (collecting cases); *see also id.* at 985 ("The rule in favor of inconsistent defenses reflects the belief of modern criminal jurisprudence that a criminal defendant should be accorded every reasonable protection in defending himself against governmental prosecution."); *State v. McPhaul*, 174 Ariz. 561, 562 (App. 1992) (rejecting argument that a defendant who testified that he did not commit a particular offense is not entitled to a lesser-included-offense instruction, reasoning that there is "nothing inconsistent, illogical or improper about a defendant saying, 'I was not the person who committed the robbery, but even if you do not believe me, the evidence shows that whoever did commit it was not armed'").

**¶15**       The State also argues we should treat self-defense like the entrapment affirmative defense, which precludes simultaneous assertion of a misidentification defense. *See* A.R.S. § 13-206(A) ("To claim entrapment, the person must admit by the person's testimony or other evidence the substantial elements of the offense charged."). This preclusion originated in the common law, and the legislature codified it. *See id.*; *State v. Gray*, 239 Ariz. 475, 477–78 ¶¶ 8–14 (2016) (tracing history of § 13-206(A)). But the legislature has not codified the holdings in *Plew* and like cases, and we are free to re-examine them.

**¶16**       We conclude that if the slightest evidence supports a finding of self-defense, the prosecution must prove its absence, even if the defendant asserts a misidentification defense. And if the case is tried to a jury, the trial court must give a self-defense instruction, if requested and supported by some evidence.

## II.  Need for self-defense jury instruction here

**¶17**       We review a trial court's refusal to instruct on self-defense for an abuse of discretion, viewing the evidence in the light most favorable to the defendant. *See King*, 225 Ariz. at 90 ¶ 13.

6

¶18        As noted above, the "slightest evidence" that a defendant acted in self-defense entitles him to a self-defense instruction. *Id.* ¶ 14. The State argues that this threshold is unmet here because a reasonable person in Carson's circumstance would not have believed that "deadly physical force [was] immediately necessary to protect himself" against the "use or attempted use of unlawful deadly physical force" by any victim. *See* A.R.S. § 13-405. It points to substantial evidence that Carson did not act in self-defense. For example, only Carson was seen with a weapon during the fight, and the wounds suffered by J.M. and S.B., as well as the location of their bodies, suggest they were shot as they ran from Carson. Also, no one testified that B.C. attacked Carson and, although a gun was later found in the car that transported B.C. to a hospital, no evidence suggested he wielded it during the party.

¶19        The State misapprehends the amount of evidence needed to support a self-defense instruction by effectively arguing that Carson was required to prove all elements of self-defense to receive an instruction. The "slightest evidence" standard presents a low threshold. *King*, 225 Ariz. at 90 ¶ 15. To cross it, the defendant need only show some evidence of "a hostile demonstration, which may be reasonably regarded as placing the accused apparently in imminent danger of losing her life or sustaining great bodily harm." *Id.* (quoting *State v. Lujan*, 136 Ariz. 102, 104 (1983)); *see also Lujan*, 136 Ariz. at 104 (stating that a "hostile demonstration" is "some outward act" that the "defendant perceives to be immediately life-threatening"). The defendant is not required to introduce evidence about each element of self-defense. *King*, 225 Ariz. at 90 ¶ 14. If the defendant shows evidence that he acted in response to a "hostile demonstration," he is entitled to a self-defense jury instruction. *Id.*

¶20        At least the slightest evidence exists that Carson shot all three victims in response to a "hostile demonstration" and therefore acted in self-defense. Carson brandished a gun during the fight that took place inside the house. Nevertheless, this did not dissuade J.M., S.B., and others from "jumping" Carson outside and then punching and kicking him while he was on the ground. Circumstantial evidence supports a finding that S.B. used one or both knives to stab at least one person during the fight and wielded one at the time he was shot. *Cf. State v. Stuard*, 176 Ariz. 589, 603 (1993) ("Arizona law makes no distinction between circumstantial and direct evidence."). While Carson was on the ground, B.C. entered the fray.

Several individuals simultaneously hitting and kicking, at least one of whom was visibly armed with a knife, was undoubtedly a "hostile demonstration." *Cf. King*, 225 Ariz. at 90 ¶ 16 (concluding that a self-defense instruction was warranted where the defendant "acted in response to being hit in the head by a two-liter bottle of water thrown by the victim," because "[t]he thrown bottle suffices to meet the 'slightest evidence' standard . . . ."); *Everett v. State*, 88 Ariz. 293, 298 (1960) (stating that victim made a "hostile demonstration" by following the defendant closely, placing his hand in a pocket, and threatening to harm the defendant). The burden then shifted to the prosecution to disprove self-defense by, for example, showing that a reasonable person in Carson's position would not have believed that deadly physical force was immediately necessary at the time he shot the victims because they were retreating. *See* A.R.S. §§ 13-205(A), -405; *State v. Powers*, 117 Ariz. 220, 227 (1977) ("After contact has been broken, one cannot pursue and kill merely because he was once in fear of great bodily harm.").

¶21      We disagree with the court of appeals majority and the State that whether Carson shot B.C. in self-defense depended on evidence that B.C. had threatened Carson with the gun later retrieved by police. *See Carson*, 242 Ariz. at 11 ¶¶ 18–19. To meet the "slightest evidence" standard, Carson did not have to show that B.C. *in fact* assaulted or threatened him. Carson only had to identify some evidence that a reasonable person in his place would have believed that B.C. would use or attempt to use deadly physical force against him. *Cf. State v. Grannis*, 183 Ariz. 52, 60 (1995) (stating that "[u]nder A.R.S. §§ 13-404 and -405, *apparent* deadly force can be met with deadly force, so long as defendant's belief as to apparent deadly force is a reasonable one" and "actual danger is not required"), *disapproved on other grounds*, *King*, 225 Ariz. at 90 ¶ 12. A mistaken belief can be a reasonable one. *See* A.R.S. § 13-204(A)(2) ("[A] mistaken belief as to a matter of fact does not relieve a person of criminal liability unless . . . [i]t supports a defense of justification."); *State v. Lamar*, 144 Ariz. 490, 497 (App. 1984) (recognizing that "mistake of fact" is contemplated in the justification instruction because it is based on what a reasonable person would do in the situation).

¶22      B.C.'s presence in the scrum surrounding Carson as he was punched and kicked permitted a reasonable person in Carson's circumstance to believe that B.C. was one of his assailants. Although B.C. testified that he was present only to pull S.B. from the fight, someone in

Carson's position—on the ground, surrounded, being punched and kicked, on a dark street as people screamed—may not have accurately perceived B.C.'s intent. And the jury could have disbelieved B.C. about his motive for joining in. *Cf. State v. Almeida*, 238 Ariz. 77, 80 ¶ 10 (App. 2015) (allowing justification instruction where defendant testified that victim was the aggressor even though State had evidence to the contrary). We agree with the partial dissent below that sufficient evidence supported Carson's request for a jury instruction on self-defense concerning the aggravated assault charges. *See Carson*, 242 Ariz. at 15 ¶ 34 (Eckerstrom, C.J., concurring in part and dissenting in part).

¶23 In sum, viewed in the light most favorable to Carson, at least the "slightest evidence" existed that he shot all three victims in self-defense. The trial court therefore erred by refusing to instruct the jury on self-defense.

## CONCLUSION

¶24 We vacate the court of appeals' opinion, reverse Carson's convictions and sentences, and remand the case for a new trial.