NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MELISSA PAIGE MCKINLEY, *Appellant.*

No. 1 CA-CR 23-0202
FILED 05-23-2024

Appeal from the Superior Court in Mohave County
No. S8015CR202100488
The Honorable Billy K. Sipe Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Emily Tyson-Jorgenson
*Counsel for Appellee*

Jill L. Evans Attorney at Law, Flagstaff
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

---

**J A C O B S**, Judge:

¶1        Melissa McKinley appeals her convictions and sentences for two counts of aggravated assault, leaving the scene of an injury accident, and driving under the influence (DUI).  Because her claims of insufficient evidence and incorrect jury instructions identify no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On April 18, 2021, McKinley drove her Ford Taurus into a line of cars stopped at a red light in Bullhead City.  McKinley was driving about 40 to 50 miles per hour, and there was no sign she braked, or otherwise tried to avoid the collision, before impact.  The force of the crash propelled the first vehicle she struck—a Dodge Challenger stopped in the left-hand turn lane—100 to 125 feet into the intersection's opposite lanes of traffic and tore off its rear bumper cover and right rear tire.  The driver of the Dodge broke both her heels and suffered facial lacerations that left permanent scars.  A passenger in the Dodge cracked two vertebrae and received a contusion to his head.  After hitting the Dodge, McKinley's Taurus struck two more vehicles.

¶3        M.W., an off-duty California Highway Patrol officer who was stopped at the same intersection, saw the collision.  M.W. told his wife to call 911 and approached McKinley as she exited her car.  When M.W. asked McKinley what happened, she "put her hands in the air and said, 'Woo, Jesus took the wheel.'"  M.W. believed McKinley was "under the influence of something" based on the nature of the crash and "the way she was acting afterwards."  M.W. saw McKinley looking around as though intending to leave, and he told her she needed to stay and that police were on the way.  McKinley nonetheless left on foot, walking away from the collision site along the shoulder of the road.  When a police officer reached the scene a short time later, M.W. pointed out McKinley.

¶4 The officer drove his patrol vehicle to McKinley, who was "walking briskly" about "200 yards from the accident scene." The officer exited his vehicle and directed McKinley to place her hands behind her back. McKinley did not comply. The officer then took McKinley to the ground and handcuffed her. He drove her back to the collision site and told her she was under arrest for leaving the scene of an injury accident. McKinley would not tell the officer her name and repeatedly said "God" or "Christ" directed her conduct. The officer could smell marijuana from where McKinley sat in the backseat of his vehicle. After being advised of her *Miranda* rights and acknowledging she understood them, McKinley admitted she smoked marijuana, including earlier that day, and consented to a blood draw. When asked if she had anything to drink that day, she responded, "[n]othing but the holy spirit." McKinley said she did not believe she was injured and that she had "never been more alive." The officer told a colleague at the accident scene that he was unsure whether this was a DUI or a mental health issue.

¶5 The officer transported McKinley to a hospital where medical personnel drew her blood and cleared her to be transported to jail. At the jail, the officer asked McKinley to perform two field sobriety tests that entailed counting slowly while walking heel to toe and balancing on one leg. McKinley began each test as instructed but then departed from the officer's directions, by performing the tests more quickly than instructed and launching into dance-like movements when she was supposed to be standing still.

¶6 McKinley's blood test results showed 13 nanograms of tetrahydrocannabinol (THC)—the primary active constituent of marijuana—per milliliter in her system (plus or minus three nanograms per milliliter), as well as carboxy-THC, a byproduct of THC metabolism. The State charged her with two aggravated assaults (using a deadly weapon or dangerous instrument against the injured driver and passenger of the Dodge), leaving the scene of an injury accident, misdemeanor resisting arrest, and misdemeanor DUI (impaired to the slightest degree).

¶7 At trial, McKinley testified she had driven from her home in Louisiana to Arizona, with limited stops, a few days before the accident and had "difficulty . . . adjusting" back to "normal." She said she took an "edible" on each of the two days before the accident and took "one little hit" of a marijuana joint about four to five hours before the accident. McKinley had lived in Bullhead City about 20 years prior and said she was looking at an apartment in which she had lived, and was distracted by memories when she realized that traffic "three cars deep" was stopped right

in front of her.  She testified that she smoked marijuana "here and there" but was "not a habitual smoker" and that she felt no effects of marijuana while driving on the day of the accident.  McKinley attributed her behavior after the collision to adrenaline and shock.

¶8          A forensic scientist testified for the State that THC levels typically fall to less than two nanograms per milliliter within two to three hours after marijuana use, but a defense forensic expert testified that a regular marijuana user could have a "baseline" amount of THC in their system equivalent to the amount detected in McKinley's blood results, hours or even days after using.  Both experts testified that there is no established level of THC that is presumptively impairing.  The defense expert testified that a regular user would generally have a higher tolerance than a less frequent user, but he acknowledged that even a frequent marijuana user could be impaired by the amount of THC detected in McKinley's blood.  THC's effects include euphoria, inattention, impaired thought processing, misestimation of time and distance, and slowed reaction times.

¶9          A jury acquitted McKinley of resisting arrest but found her guilty of the remaining charges.  The superior court sentenced her to 15 years' imprisonment for the aggravated assault convictions under the dangerous offense sentencing statute, to a consecutive one-year prison term for leaving the scene of an injury accident, and to 10 days in jail for misdemeanor DUI.

¶10          McKinley timely appealed.  We have jurisdiction under Article VI, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(a)(1), 13-4031, and 13-4033.

## DISCUSSION

¶11          McKinley argues there was insufficient evidence to support her DUI and aggravated assault convictions.  She also contends, as to the aggravated assault counts, that the court should have instructed jurors on negligence and asked them to explicitly determine whether the offenses were dangerous.  We address each contention in turn.

### I.     Sufficient Evidence Supports McKinley's Conviction for DUI.

¶12          We review a claim of insufficient evidence *de novo*, viewing all facts and resolving all evidentiary conflicts against the defendant and in favor of the verdict. *State v. Pena*, 235 Ariz. 277, 279 ¶ 5 (2014). Our review is limited to whether substantial evidence supports the verdict.  *Id.*

"Substantial evidence is more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Ellison*, 213 Ariz. 116, 134 ¶ 65 (2006) (cleaned up). We do not "reweigh the evidence to decide if [we] would reach the same conclusions as the trier of fact." *State v. Barger*, 167 Ariz. 563, 568 (App. 1990).

¶13 McKinley's DUI charge required jurors to find she was driving while "impaired to the slightest degree" by "any drug." A.R.S. § 28-1381(A)(1). The jury's verdict is supported by substantial evidence. McKinley had THC in her system at the time of the accident and, as both parties acknowledged, there is no presumptive threshold of an impairing level of THC. Informed by evidence about THC's known effects, jurors could infer from the circumstances of the accident and McKinley's statements and behavior that she was driving while impaired by THC.

## II. Sufficient Evidence Supports McKinley's Convictions for Aggravated Assault.

¶14 To find McKinley guilty of each aggravated assault count, the jury needed to determine that she "[i]ntentionally, knowingly or recklessly caus[ed] . . . physical injury" to each victim "us[ing] a deadly weapon or dangerous instrument." A.R.S. §§ 13-1203(A)(1), -1204(A)(2). An assault causing physical injury is committed "recklessly" if the defendant "is aware of and consciously disregards a substantial and unjustifiable risk that [physical injury] will occur" and if the risk is "of such nature and degree that [its] disregard . . . constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." A.R.S. § 13-105(10)(c). "A person who creates such a risk but who is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk." A.R.S. § 13-105(10)(c). "'Intoxication' means any mental or physical incapacity resulting from use of drugs, toxic vapors or intoxicating liquors." A.R.S. § 13-105(24). A "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12).

¶15 Substantial evidence supports the jury verdicts for aggravated assault. McKinley does not dispute that she used her car—which is "readily capable of causing death or serious physical injury"—to cause the accident resulting in physical injury to each victim. Jurors could find, based on the evidence presented, that McKinley acted recklessly when she drove 40 to 50 miles per hour without braking into a line of cars stopped

at a major intersection in the middle of the day. First, jurors could find that McKinley's voluntary marijuana consumption compromised her awareness of the substantial and unjustifiable risk posed by her distracted driving. Alternatively, jurors could find that McKinley's level of distraction—even if unaffected by her marijuana use—was reckless under the circumstances. *See State v. Miles*, 211 Ariz. 475, 482 ¶ 27 (App. 2005) (explaining that evidence the defendant "failed to stop or even slow down at a clearly visible stop sign and that he had entered the intersection 'very fast'" was sufficient for jurors to find he was "aware of and had consciously disregarded a substantial and unjustifiable risk that other motorists or pedestrians could be seriously injured" and "that his actions constituted a gross deviation from conduct a reasonable person would observe in a similar situation.").

### III.  The Superior Court Did Not Commit Fundamental Error by Not Instructing Jurors on Negligence *Sua Sponte*.

**¶16**        McKinley argues that even if there was substantial evidence she acted recklessly, the superior court should have defined negligence for jurors so they could make an informed determination whether her conduct rose to the level of recklessness. "'Criminal negligence' means . . . that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists . . . [and] the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." A.R.S. § 13-105(10)(d). Civil negligence is satisfied by "[m]ere inadvertence" of any "'unreasonable' risk." *In re William G.*, 192 Ariz. 208, 213 (App. 1997).

**¶17**        We consider *de novo* whether the superior court properly instructed the jury, looking to the instructions "as a whole to determine whether the jury received the information necessary to arrive at a legally correct decision." *State v. Ewer*, 254 Ariz. 326, 329 ¶ 10 (2023) (cleaned up). "A conviction will not be reversed based on the instructions unless, taken as a whole, they misled the jurors." *State v. Zaragoza*, 221 Ariz. 49, 53 ¶ 15 (2009). Because McKinley did not request a negligence instruction at trial, or object to its omission, she must establish fundamental, prejudicial error. *State v. Bearup*, 221 Ariz. 163, 168 ¶ 22 (2009); *see also State v. Gallegos*, 178 Ariz. 1, 12 (1994) ("[A] trial judge's failure to give an instruction *sua sponte* provides grounds for reversal only if such failure is fundamental error.").

**¶18**        We see no error, much less fundamental error. A defendant is entitled to a "lesser-included offense instruction if it is supported by the evidence." *State v. Wall*, 212 Ariz. 1, 4 ¶ 17 (2006). But "[w]here no lesser included offense exists, it is not error to refuse the instruction." *State v.*

*Allen*, 253 Ariz. 306, 343 ¶ 119 (2022) (cleaned up). Because there is no offense of negligent aggravated assault, McKinley was not entitled to a jury instruction on negligence. No authority requires the jury to be instructed on a lesser mental state that is not an element of a charged crime.

**¶19** Nor was a negligence instruction needed for jurors to properly determine the aggravated assault counts. Those charges required jurors to find McKinley acted recklessly, knowingly, or intentionally. McKinley was free to argue, and did, that her conduct was merely negligent. "Although a party is entitled to an instruction on all theories reasonably supported by the evidence, 'when a jury is properly instructed on the applicable law, the trial court is not required to provide additional instructions that do nothing more than reiterate or enlarge the instructions in defendant's language.'" *State v. Forde*, 233 Ariz. 543, 566 ¶ 91 (2014) (quoting *State v. Bolton*, 182 Ariz. 290, 309 (1995)). The definitions of intentionally, knowingly, and recklessly provided by the superior court inherently exclude lesser mental states that do not satisfy the elements of the definitions. The instructions given did not mislead the jury, and the superior court did not have to provide additional instructions, or a gloss on the existing instructions, that would put into words what "recklessly" does not mean.

## IV. The Superior Court Did Not Commit Fundamental Error by Not Asking Jurors to Make an Explicit Finding That McKinley Committed a "Dangerous Offense" Under A.R.S. § 13-704.

**¶20** The State charged McKinley with committing aggravated assault "with a deadly weapon or dangerous instrument" subject to an enhanced sentence for dangerous offenses under A.R.S. § 13-704. A "dangerous offense," for purposes of A.R.S. § 13-704, is "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury on another person." A.R.S. § 13-105(13).

**¶21** With both parties' approval, the superior court declined to request separate "dangerous offense" findings from the jury during its deliberations on the aggravated assault counts. The court later sentenced McKinley on those convictions to enhanced terms under A.R.S. § 13-704(A).

**¶22** McKinley now argues the court erred by not asking jurors to explicitly find that the aggravated assaults were "dangerous offenses." Because she did not raise this contention at trial, she must establish

fundamental, prejudicial error. *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018).

**¶23** McKinley fails to establish error, fundamental or otherwise, because "no specific finding of dangerousness is required where an element of the offense charged requires proof of the dangerous nature of the felony." *State v. Smith*, 146 Ariz. 491, 499 (1985); *see also State v. Caldera*, 141 Ariz. 634, 637–38 (1984) (reasoning that a jury's dangerousness determination may be made either explicitly by special verdict or implicitly when dangerousness is "a necessary element in the felony for which the appellant was originally convicted.").

**¶24** Because jurors necessarily determined that the aggravated assault counts were dangerous offenses when they found McKinley guilty of those charges, the superior court could sentence her under § 13-704 without a separate finding. *Compare* A.R.S. § 13-1204(A)(2) (defining aggravated assault as an assault by a "person us[ing] a deadly weapon or dangerous instrument"), *with* A.R.S. § 13-105(13) (defining dangerous offense as "an offense involving the . . . use . . . of a deadly weapon or dangerous instrument"); *see also State v. Suniga*, 145 Ariz. 389, 396 (App. 1985) (finding dangerous offense "implicit" in guilty verdict for aggravated assault by use of a deadly weapon or dangerous instrument).

**¶25** We are unpersuaded by McKinley's reliance on *State v. Larin*, 233 Ariz. 202, 213 ¶¶ 41–42 (App. 2013), in which this court held the superior court could not sentence the defendant under A.R.S. § 13-704 without a specific dangerousness finding by the jury even though the jury found the defendant guilty of an inherently dangerous offense. The court in *Larin* confirmed the general rule that "a jury need not make a finding of dangerousness where it is 'inherent in the crime.'" *Id.* at 212 ¶ 38. The court's decision not to apply that rule in *Larin* was based on an unusual peculiarity of the case—specific information suggesting the jury might have found a dangerous offense allegation unproven despite its verdict. *Id.* at ¶ 42. No such circumstance was present in McKinley's case.

**¶26** Yet even assuming that the superior court should have submitted the dangerous offense finding to the jury, McKinley does not establish reversible error. As noted above, McKinley's failure to timely object to the court's omission obligates her to show that any error was both fundamental and prejudicial. *Escalante*, 245 Ariz. at 138 ¶ 1. Denying a defendant the right to have a jury find sentence-enhancing facts constitutes fundamental error. *State v. Price*, 217 Ariz. 182, 186–87 ¶ 21 (2007); *see also Allen*, 253 Ariz. at 361 ¶ 211 ("The imposition of an illegal sentence

constitutes fundamental error that requires us to remand for resentencing."). But McKinley does not show prejudice because no reasonable jury "could have plausibly and intelligently" failed to find that the aggravated assaults were dangerous offenses in her case. *Escalante*, 245 Ariz. at 144 ¶ 31. McKinley did not contest that she injured the victims with her car and she acknowledged in her testimony that a car could be dangerous and cause death. *See State v. Cleere*, 213 Ariz. 54, 58–59 ¶ 12 (App. 2006); *State v. Ruggiero*, 211 Ariz. 262, 268 ¶ 28 (App. 2005). Given the evidence presented at McKinley's trial, the superior court's failure to submit a dangerous offense finding to the jury "was at worst harmless error." *State v. Anderson*, 211 Ariz. 59, 61 ¶ 7 (2005).

## CONCLUSION

¶**27**      We affirm McKinley's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:     TM

9